## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| EILEEN NECE, on behalf of herself and all others similarly situated,<br><br>                        Plaintiff,<br><br>   - against –<br><br>QUICKEN LOANS, INC.,<br><br>                        Defendant. | Case No.<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Eileen Nece ("Plaintiff"), individually and on behalf of all others similarly situated (the "Classes," as defined below), upon personal knowledge as to the facts pertaining to herself and upon information and belief as to all other matters, and based on the investigation of counsel, brings this class action against defendant Quicken Loans, Inc. ("Quicken Loans" or "Defendant") for statutory damages and injunctive relief, demands a trial by jury, and alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of herself and Class members who received repeated and harassing telemarketing calls from Quicken Loans without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.*, and the Federal Communication Commission ("FCC") rules and regulations promulgated thereunder, 47 C.F.R. §64.1200 (hereinafter referred to as the "TCPA").

2.      Quicken Loans has engaged and continues to engage in four separate courses of conduct that violate the TCPA. *First*, Quicken Loans or its agents initiated and delivered prerecorded telemarketing calls and messages to Plaintiff's and Class members' residential

1

landline phones without their prior express consent, even after ignoring demands to stop making such telemarketing calls.  That conduct violates the TCPA, 47 U.S.C. §227(b)(1)(B) and 47 C.F.R. §64.1200(a)(3).

3.     *Second*, Quicken Loans or its agents made repeated and harassing telemarketing calls to persons, including Plaintiff, whose telephone numbers are included on the national Do-Not-Call Registry (the "National DNC Registry"), even after ignoring demands to stop making such telemarketing calls.  That conduct violates the TCPA, 47 U.S.C. §§ 227(c) and (e) and 47 C.F.R. §64.1200(c) (for residential telephone subscribers) and (e) (for wireless telephone numbers).

4.     *Third*, Quicken Loans or its agents make telemarketing calls to residential telephone numbers without first instituting procedures mandated by the TCPA before any telemarketing calls can lawfully be made.  That conduct violates the TCPA, 47 U.S.C. §227(c) and (e) and 47 C.F.R. §64.1200(d) (for residential telephone subscribers) and (e) (for wireless telephone numbers).

5.     *Fourth*, even if Quicken Loans did institute the minimum procedures for maintaining a list of persons who request not to receive telemarketing calls from Quicken Loans or its agents, Quicken Loans fails to follow those procedures since it persists in making telemarketing calls to persons, including Plaintiff, who request not to receive such calls from Quicken Loans or to be placed on Quicken Loans' company-specific Do-Not-Call list (the "Quicken Loans DNC List").  That conduct violates the TCPA, 47 U.S.C. §227(c) and (e) and 47 C.F.R. §64.1200(d) (for residential telephone subscribers) and (e) (for wireless telephone numbers).

6.    Under the TCPA, Quicken Loans is liable for all calls made by it or its agents for the violations of 47 U.S.C. §227(b) and (c) and FCC rules and regulations.

7.    Plaintiff and the Classes were injured as a direct and proximate result of Quicken Loans' TCPA violations.

8.    Plaintiff brings this action for injunctive relief and statutory damages resulting from Quicken Loans' illegal actions and to permanently enjoin Quicken Loans' violations of the TCPA.

9.    Because Quicken Loans' unlawful acts were and are knowing and willful, Plaintiff and the Classes are entitled to additional remedies and damages under the TCPA up to $1,500.00 for each violation.

## THE PARTIES

10.    Plaintiff Eileen Nece is a resident of Palm Harbor, Florida.  At all relevant times, she was the owner and subscriber of the residential landline telephone number called by Quicken Loans.

11.    Defendant Quicken Loans is an Internet-based seller of mortgage loans and a retail lender doing business nationwide.  Quicken Loans is a for-profit and non-charitable entity that is authorized by the Florida Secretary of State to do business in Florida and maintains a registered agent for service of process in Florida.  Quicken Loans is a subsidiary of Rock Holdings, Inc.

## SUBJECT MATTER JURISDICTION

12.    Plaintiff invokes the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for all civil actions arising

3

under the laws of the United States, and pursuant to 47 U.S.C. §§ 227(b)(3) and (c)(5).

13.     This matter in controversy exceeds $5,000,000.00, as each member of the proposed Classes is entitled to between $500.00 and $1,500.00 in statutory damages for each violation of the TCPA.  Further, Plaintiff's alleged Classes include at least one Class member belonging to a different state.  Therefore, the elements of subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act ("CAFA") are present.

## PERSONAL JURISDICTION

14.     This Court possesses specific personal jurisdiction over Quicken Loans as a result of its acts within this District that violate the TCPA.

15.     Quicken Loans maintains sufficient minimum contacts with this District, has purposefully availed itself of the privilege of doing business in this District, maintains a registered agent in Florida and possesses such a significant and continuous presence in this District such as to be subject to the personal jurisdiction of this Court.

16.     In addition, Plaintiff's and the Florida Class members' injuries alleged in this action arise from Quicken Loans' business of marketing mortgage and loan products and services in Florida, result from Defendant's tortious conduct in violation of the TCPA within Florida.  Quicken Loans directed its conduct to have intended effects within Florida.

## VENUE

17.     Venue is proper in this District under 28 U.S.C. §1391.

## THE TELEPHONE CONSUMER PROTECTION ACT

18.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices. The TCPA vests the FCC with

authority to issue regulations implementing the TCPA.[1]

19.     Section 227(b)(1)(B) makes it a violation of the TCPA to make telemarketing calls using an artificial or prerecorded voice to deliver a message for commercial purposes to a residential, landline telephone number without the prior express consent of the consumer.  FCC rulings affirm that prohibition.[2]  Since at least October 2013, prior express consent must be in writing.[3]

20.     TCPA Section 227(c) empowers the FCC to enact regulations to enforce Do-Not-Call registries.[4]  The FCC has created three such rules and regulations.  The first prohibits calls made to persons who have registered their telephone number with the National DNC Registry.[5]  Quicken Loans has violated the FCC regulations concerning the National DNC Registry, thereby violating the TCPA.[6]

21.     FCC rulemaking has also made it a violation of the TCPA to refuse to honor a consumer's request to be placed on a Do-Not-Call registry or list that must be maintained by

---

[1]     *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order (July 3, 2003).

[2]     47 C.F.R. §64.1200(a)(3).

[3]     *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, FCC 12-21 (Feb. 15. 2012).

[4]     *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, FCC 08-147 (June 17, 2008).

[5]     47 C.F.R. §§ 64.1200(c) and (e).

[6]     47 U.S.C. §227(c)(5).

each company who initiates or causes telemarketing calls to be made.[7]   Quicken Loans has violated the FCC regulations concerning company-specific DNC registry or lists, thereby violating the TCPA.[8]

22.    In addition, the FCC rules and regulations prohibit any person or entity from making any call for telemarketing purposes to a residential telephone subscriber until the caller has instituted proper procedures for maintaining a list or persons who request not to be called by that person or entity. Quicken Loans initiates telemarking calls to residential telephone subscribers prior to instituting these proper procedures.  Those rules and regulations apply equally to calls made to wireless telephone numbers.

23.    According to the FCC,

On July 3, 2003, the Commission revised the TCPA rules and adopted new rules to provide consumers with several options for avoiding unwanted telephone solicitations.  Specifically, the Commission established a national do-not-call registry that would be jointly implemented by the Federal Trade Commission (FTC) and this Commission.  The national registry, which went into effect on October 1, 2003, supplements the long-standing company-specific do-not-call rules which require companies to maintain lists of consumers who ask not to be called by a particular company.[9]

24.    The FCC has held that previously-given prior express consent can be revoked by the consumer, orally or in writing.  In a July 2015 Declaratory Ruling, the FCC confirmed that, "Consumers have a right to revoke consent, using any reasonable method including orally or in

[7]    47 C.F.R. §§ 64.1200(d) and (e).

[8]    47 U.S.C. § 227(c)(5).

[9]    *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Second Order on Reconsideration at ¶4, FCC 05-28, (Feb. 18, 2005); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003); *Osorio v. State Farm Bank*, 746 F. 3d 1242, 1255-56 (11th Cir. 2014).

writing."[10]

25.     In a 2013 Ruling, the FCC reiterated that sellers are vicariously and jointly liable for violations of the TCPA made by their agents, regardless of whether the agency is express or implied, and including when the agent is vested with apparent authority or when the creditor ratifies the acts or the agent that violate the TCPA.[11]

## STATEMENT OF FACTS

26.     Quicken Loans advertises itself as one of the largest sellers of mortgage and loan products and services in the country.  Its website and press releases claim that Quicken Loans is "the nation's largest online retail mortgage lender and the second largest retail mortgage lender in the U.S." and has closed "$220 billion of mortgage volume across all 50 states since 2013."

27.     Quicken Loans or others operating on its behalf regularly place telemarketing calls to consumers using live agents and prerecorded telephone messages.  It engages in these practices throughout the United States, including Plaintiff's home-state of Florida.   None of these telemarketing calls are for emergency purposes and none of them are to collect any debt owed to or guaranteed by the government. Quicken Loans' telemarketing calls follow mandatory scripts.

28.     Quicken Loans makes telemarketing calls using prerecorded and artificial voice messages to consumers' residential landline telephone even when they do not have the

---

[10]     *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Second Order on Reconsideration at ¶64, FCC 15-72 (July 10, 2015).

[11]     *In re Joint Petition filed by Dish Network, LLC*, ("*Dish Network*"), 28 F.C.C.R. 6574, 6593 ¶¶ 1, 24, 33-48 (2013); *see also id* at ¶28 ("[A] seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.").

consumer's prior written express consent to make those calls, including when a consumer has revoked consent and instructed Quicken Loans to cease making telemarketing calls.

29.     Quicken Loans makes telemarketing calls to consumers whose telephone numbers are listed on the National DNC Registry.  Quicken also calls individuals after they ask it to stop calling and to be placed on the Quicken Loans DNC List.

30.     Quicken Loans was previously caught by the FCC for violating the TCPA Do-Not-Call rules.  As a result, the FCC issued an official CITATION, dated April 6, 2007, directing Quicken Loans to cease its violations.  That official CITATION attached multiple consumer complaints accusing Quicken Loans of violating the National DNC Registry rules. That CITATION directed Quicken Loans to immediately cease violating the TPCA Do-Not-Call restrictions.  *See* Exhibit A attached hereto.

31.     But Quicken Loans has not stopped violating the TCPA.  In the years since the CITATION, Quicken Loans has persisted in its unlawful conduct and it has been sued multiple times for violating the TCPA Do-Not-Call restrictions.

32.     Quicken Loans' aggressive telemarketing is also the subject of many consumer complaints accusing Quicken Loans of making repetitive telemarketing calls to persons on the National DNC Registry or who have requested to be placed on the Quicken Loans DNC List. Many of these consumers also complain that Quicken Loans employs prerecorded and artificial voice messages in their telemarketing calls.

## QUICKEN LOANS USES A COMPANYWIDE STRATEGY OF HIGH-FREQUENCY TELEMARKETING

33.     Quicken Loans employs "loan consultants" to sell its loan products.  Those loan consultants are paid on a commission-basis, dependent on the number of loans sold.

8

Promotions and salaries for loan consultants are also dependent on the number of loans sold.  As stated by then-Vice President (now President and Chief Marketing Officer) of Quicken Loans Jay Farner, "this is a commissioned sales environment and we got to treat it as such."

34.     As demonstrated in a prior lawsuit, Quicken Loans requires its loan consultants to make between 60 – 80 outbound telephone calls every day, spending between 4-5 hours making calls to "leads."  Leads are generated by Quicken Loans' Internet marketing department.  Once a Quicken Loans' loan consultant is provided a lead, that consultant is expected to call that lead at least 4 times.  Quicken Loans has the ability to monitor, and does monitor, the length of time and number of outbound telephone calls made by its loan consultants.  Leads are assigned to loan consultants by Quicken Loans' computer systems.

35.     This high-pressure sales culture at Quicken Loans has persisted for many years.  One 2004 email from Mr. Farner to Quicken Loans "web bankers" simply stated:  "SELL SELL SELL," in bold, block letters.  A group voicemail message by Mr. Farner reminded Quicken Loans' loan consultants that: "Our job is to Sell!"  Another instructed:  "My expectations are that people start early in the day.  I don't mean that I want you to get here early.  What I mean is when you get here I want you to get started selling."

36.     Employment offer letters to Quicken Loans' loan consultants have stated:    "As a sales professional, you will need to work the phones hard.  In order to be successful, we have found that you will need to make a minimum of 80 outbound calls per day and spend a minimum of five hours on the phone selling to clients per day."

37.     During those outbound telephone calls, Quicken Loans' loan consultants are trained to use scripts provided by Quicken Loans.  Those sales scripts set forth the Quicken

Loans Sales Process.

38.     Quicken Loan consultants who do not follow the Sales Process are subject to

discipline and termination.  As stated by Mr. Farner:

> And what I see right now is people not being perfect on every single phone call.
> Sometimes you follow the process; sometimes you don't follow the process. …
> And here is the fact of the matter.  If at any point in time you've got somebody on
> the phone and you are not selling properly, plain and simple, you're hurting
> yourself. Your [sic] either winning or losing. There is no in between. …  I will
> not accept any excuse and the three-strike policy is if I – I'm always listening to
> phone calls.  If I happen to listen to a phone call where you don't do the right
> steps.  You don't four shadow, you don't close.  You don't - I mean I've got
> people that I've listened to who aren't even doing step one which is just to simply
> get out there and tell them to take out a pen and a piece of paper.  If your [sic] not
> doing these things I'm going to issue you a strike.  And if three strikes then we're
> just going have to not work together any longer.  …  So you need to follow the
> process.

39.     Quicken Loans' records outgoing telemarketing calls made by their loan

consultants on a computer system.  It retains data on outbound telephone calls for at least seven

years and has the ability to query its systems.

40.     A former Quicken Loans employee provided further insight into Quicken Loans'

business culture of encouraging employees to engage in relentless and harassing telemarketing

tactics on the website Complaints Board.[12]  The former employee stated that Quicken Loans

hires 200 sales floor employees per month, mainly recent college graduates.  These employees

are encouraged to call as many phone numbers as possible and meet daily sales call quotas.  The

former employee described the job responsibilities of these sales employees as:

[W]e aren't mortgage loan originators, rather, we are telemarketers and our sole

---

[12]     http://www.complaintsboard.com/complaints/quicken-loans-detroit-c407643.html (last
visited September 6, 2016).

purpose is too [*sic*] remain constantly dialing the phone, speaking to anyone who put a phone number anywhere online, and convince them to take a deposit. NO BODY YOU SPEAK WITH AT QL IS A MORTGAGE EXPERT. They are all young, brand new kids who are being monitored incessantly by supervisors. They have a quota of sales calls that must be met daily. Their job is not to 'work with' clients on finding a suitable mortgage product based on client needs, but to as quickly as possible sign clients up to the most lucrative deal possible . . . We dial the phones from 8 am until 8 pm, 6 days per week, DESPERATE to get clients enrolled in refi, purchase, or reverse mortgages.

### TELEMARKETING CALLS BY QUICKEN LOANS TO PLAINTIFF NECE

41. Plaintiff Nece is the owner and subscriber of residential landline telephone number (727) 785-7355. Ms. Nece pays the bill for and was and is the regular user of this phone line and she needs this phone line to receive and make other phone calls.

42. Plaintiff Nece's residential telephone number was listed with the National DNC Registry in October, 2007. *See* Exhibit B attached hereto. Plaintiff Nece re-listed her residential telephone number with the National DNC Registry in January, 2012.

43. On or about November 30, 2012, Quicken Loans started making telemarketing calls to Plaintiff Nece's residential telephone number to telemarket its mortgage and loan products and services.

44. Upon receiving that *first* call from Quicken Loans, on or about November 30, 2012, Plaintiff Nece instructed the Quicken Loans' representative or agent that she did not wish to receive any future calls from Quicken Loans, that she was not interested in doing business with Quicken Loans, and to not call her again.

45. To the extent Quicken Loans was mistaken in its understanding that it had received Plaintiff Nece's prior express consent to call Plaintiff Nece, that misunderstanding was dispelled when she expressly revoked any such consent during the *first* call by Quicken Loans

to her residential telephone number.

46.     Nevertheless, Quicken Loans ignored Plaintiff Nece's demand to immediately cease calling her.   Instead, Quicken Loans persisted in calling Plaintiff Nece's residential telephone number, often multiple times in single day.   These calls were annoying to Plaintiff and disturbed her privacy.

47.     Quicken Loans called Plaintiff from multiple telephone numbers. One phone number used by Quicken Loans to call Plaintiff was (313) 373-2064, which was shown on Plaintiff's caller ID.

48.     Telephone number (313) 373-2064 is a telephone number used by Quicken Loans.

49.     Some of the telemarketing calls from Quicken Loans to Plaintiff Nece's residential telephone number utilized an "artificial or prerecorded voice" within the meaning of 47 U.S.C. §227(b)(1)(B).   These prerecorded messages were not subject to questioning or interruption and were not from a "live" person.   These artificial or prerecorded voice calls to Plaintiff were made to telemarket Quicken Loans' mortgage products.

50.     Quicken Loans makes telephone calls utilizing prerecorded voice messages.

51.     Quicken Loans makes telephone calls utilizing artificial voice messages.

52.     On December 11, 2012, Plaintiff Nece mailed a written complaint to Quicken Loans' Chief Executive Officer, addressed to Quicken Loans' headquarters.   That letter listed Plaintiff Nece's residential telephone number and indicated that it was "Unlisted & On Do Not Call List."   *See* Exhibit C attached hereto.

53.     Plaintiff Nece's December 11, 2012 letter further stated:

Each time one of your representatives called me, I told them I was not interested and preferred to deal locally. That did not stop them from calling me daily, regardless of how many times I told them I do not want to deal with your company so stop calling me, it did not do any good. Your staff persisted in harassing and stalking me daily, even though I told them I was busy and to stop calling me, as I would deal locally!

54.     Plaintiff filed copies of her December 11, 2012 letter with Florida and federal governmental agencies to enlist assistance is forcing Quicken Loan's compliance with the TCPA and Do-Not-Call rules.

55.     Plaintiff again complained to the Florida Department of Agriculture and Consumer Services on December 13, 2012. That complaint stated, "Have gotten over 2 dozen phone calls from Quicken Loans after I told them I was not interested in one weeks time. Different numbers showed up on my Caller ID. This company needs to be held liable for harassment / stalking!" *See* Exhibit D attached hereto.

56.     In her December 13, 2013 complaint, in response to the inquiry whether "The caller immediately identified him/herself and the business they represent" Plaintiff checked the box that indicated "No." Plaintiff also stated in this same complaint that the identity of the caller from Quicken Loans was "Unknown." The identity of the caller from Quicken Loans was "Unknown" because the caller failed to identify himself or herself.

57.     When Quicken Loans violations still did not cease, Plaintiff Nece complained to the Pinellas County Department of Justice & Consumer Services on December 17, 2012. That complaint asked that Quicken Loans, "Stop calling me! I should not have to repeat myself 3 times in 1 day, 7 days a week!"

58.     In response to her complaints, Quicken Loans' eventually responded. Those letters acknowledged the repeated calls complained of by Plaintiff Nece.

13

59.    The last Quicken Loans response letter was dated March 8, 2013 and stated that Quicken Loans would finally cease calling Plaintiff Nece's residential telephone number.  A true and correct copy of this letter is attached hereto as Exhibit E.

60.    Quicken Loans is liable to Plaintiff Nece and the Classes she represents for violations of the TCPA and FCC rules and regulations, which violations directly and proximately caused her and the Classes injury and damages.

## CLASS ACTION ALLEGATIONS

61.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on her own behalf and behalf of the following Classes of similarly-situated persons defined as follows:

> 1. **National Residential Call Class:**  All residential telephone subscribers in the United States who from September 7, 2012 to the present (the "Class Period") received a telemarketing call from Quicken Loans.
>
> 2. **Prerecorded Residential Call Class**:  All persons in the United States who from September 7, 2012 to the present (the "Class Period") (1) received a commercial telemarketing call from Quicken Loans or its agent; (2) at their residential landline or cellular telephone number; (3) using an artificial or prerecorded voice.
>
> 3. **National DNC Class**:  All persons in the United States and its territories from September 7, 2012 to the present (the "Class Period") (1) whose telephone number was listed on the National Do-Not-Call Registry for at least 30 days; and (2) who received more than one commercial telemarketing call Quicken Loans or its agent within any twelve-month period.
>
> 4. **Quicken Loans DNC Class**:  All persons in the United States and its territories who from September 7, 2012 to the present (the "Class Period") (1) directed Quicken Loans or its agent(s) to not call their telephone number; (2)

who thereafter received more than one commercial telemarketing call from Quicken Loans or its agent within any twelve month period.

Excluded from the Classes are persons who provided prior express consent to receive calls from Quicken Loans, unless that prior express consent had been revoked. Further excluded are Defendant and its subsidiary(ies), officers, directors, employees, partners and co-venturers. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

62.     The Classes satisfy the FED. R. CIV. P. 23 numerosity, commonality, typicality, adequacy, predominance, superiority and ascertainability requirements.

63.     Plaintiff does not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of Defendant and its agents. However, Plaintiff reasonably believes that the Classes encompass at minimum many thousands of consumers.

64.     Plaintiff and all members of the Classes have been harmed by the unlawful acts of Defendant. Plaintiff's and the Classes' privacy was violated and they were subject to annoying and harassing telemarketing calls.

65.     The joinder of all members of the Classes is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The identities of the Class members can be readily ascertained from Quicken Loans and its agents' call records.

66.     There are well-defined, nearly identical, questions of law and fact affecting all parties.  Common question of law and fact raised in this action concerning the Classes' claims include the following:

(a)     Whether the telemarketing calls made to Plaintiff, and members of the Classes' telephone numbers used an artificial or prerecorded voice;

(b)     Whether Quicken Loans has instituted the procedures mandated by 47 C.F.R. §227(d) prior to making any telemarketing call;

(c)     Whether telemarketing calls by Quicken Loans were made for a commercial purpose;

(d)     Whether such telemarketing calls were made by or on behalf of Quicken Loans;

(e)     Whether Quicken Loans violated the TCPA or regulations;

(f)     Whether Plaintiff and the Classes are entitled to damages, declaratory relief and/or injunctive relief as a result of Defendant's violations of the TCPA;

(g)     Whether Quicken Loans' conduct was knowing or willful; and

(h)     Whether Quicken Loans is a charity or whether the calls it makes are for the purpose of collecting debts owed to or guaranteed by the United States government.

67.     Plaintiff asserts claims that are typical of each member of the Classes.

68.     Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained able counsel with extensive experience in prosecuting class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA. Plaintiff's interests are coincident with, and not antagonistic to, the interests of the Classes.

69.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual Class members, including legal and factual issues relating to liability and damages.

70.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant.

71.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Class wide relief is essential to compel Defendant to comply with the TCPA.  Since the damages, or statutory damages, suffered by individual members of the Classes may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them.  The Classes are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.  Plaintiff will encounter no difficulty in managing this action as a class action.

72.     Defendant has acted and refused to act, as alleged herein, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief to the Classes. Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION

### VIOLATION OF TELEPHONE CONSUMER PROTECTION ACT

#### (ON BEHALF OF PLAINTIFF AND THE PRERECORDED RESIDENTIAL CALL CLASS)

73.　Plaintiff restates, realleges, and incorporates by reference the foregoing paragraphs.

74.　Plaintiff and the members of the Prerecorded Residential Call Class are "persons" and "called part[ies]" under the TCPA.

75.　Section 227(b)(1)(B) of the TCPA makes it unlawful for:

> [A]ny person within the United States, or any person outside the United States if the recipient is within the United States … (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B);

47 U.S.C. §227(b)(1)(B).  Additional prohibitions are set forth in FCC rules and regulations, including 47 C.F.R. §64.1200(a)(3).[13]

76.　The foregoing acts and omissions of Quicken Loans, or its agents acting on its behalf, with respect to Plaintiff and the Prerecorded Residential Call Class violated the TCPA, including but not limited to Section 227(b)(1)(B) and FCC rules and regulations.

77.　The calls made by Quicken Loans, or its agents, to Plaintiff and the Prerecorded Residential Call Class were made for commercial purposes, and not emergency purposes.

78.　The calls made by Quicken Loans, or it agents, were not made to collect a debt.

---

[13]　Pursuant to the Hobbs Act, all federal courts are bound by the FCC's interpretations of the TCPA, unless invalidated by a Court of Appeals.  28 U.S.C. §2342, *et. seq.*

79.     Each call to Plaintiff's and the Prerecorded Residential Call Class members' residential landline telephone numbers employing an "artificial or prerecorded voice", within the meaning of 47 U.S.C. §227(b)(1)(B) violated TCPA Section 227(b)(1)(B) and FCC regulations.

80.     Quicken Loans, or its agents, called Plaintiff's residential landline telephone number and left an artificial or prerecorded voice message on multiple occasions.  Those calls by Quicken Loans persisted for an unreasonable period of time even after Plaintiff demanded that Quicken Loans cease calling and after she advised Quicken Loans that her telephone number was listed on the National DNC Registry.

81.     Plaintiff and the Prerecorded Residential Call Class are entitled to pursue claims against Defendant during the Class Period for an injunction, pursuant to 47 U.S.C. §227(b)(3)(A), to enjoin Defendant's violations of TCPA Section 227(b)(1)(B).  Plaintiff and the Prerecorded Residential Call Class seek to enjoin Quicken Loans' violations of the TCPA.

82.     Plaintiff and the Prerecorded Residential Call Class are entitled to an award of statutory damages of $500.00 for each violation, pursuant to 47 U.S.C. §227(b)(3)(B), and also seek to enjoin future violations.  To the extent the violations were willful or knowing, Plaintiff and the National Residential Call Class are entitled to an award of up to $1,500.00 for each violation.

83.     Plaintiff and the Prerecorded Residential Call Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT

#### (ON BEHALF OF PLAINTIFF AND THE NATIONAL DNC CLASS)

84.     Plaintiff restates, realleges, and incorporates by reference all of the foregoing paragraphs.

85.     Plaintiff and the members of the National DNC Class are "persons" and "called part[ies]" under the TCPA.

86.     Plaintiff Nece is the owner and subscriber of residential telephone number (727) 785-7355.   Plaintiff's residential telephone number was registered on the National DNC Registry on October 24, 2007.   Plaintiff's residential telephone number has been registered on the National DNC Registry continuously since October 24, 2007.

87.     Plaintiff confirmed the registration of her residential telephone number on the National DNC Registry in January 2012.

88.     Section 227(c) of the TCPA and 47 C.F.R. §§ 64.1200(c) and (e) prohibit telemarketing calls to persons who have registered their telephone numbers with the National DNC Registry and who have either: (i) not provided their written and signed prior express consent to receive calls; or (ii) revoked any previously-given consent.  Quicken Loans does not qualify for any exception to TCPA liability set forth in 47 C.F.R. §64.1200(c)(2)(i), (ii) or (iii).

89.     Quicken Loans, or its agents, called Plaintiff's residential landline telephone number listed on the National DNC Registry many times during a twelve-month period, beginning on or about November 30, 2012 and persisting for an unreasonably long period of time.  Those calls by Quicken Loans persisted even after Plaintiff demanded that Quicken Loans

cease calling and after she advised Quicken Loans that her telephone number was listed on the National DNC Registry.

90.    Quicken Loans, or it its agent, made more than one commercial telemarketing call to Plaintiff and each member of the National DNC Class in violation of Section 227(c) and 47 C.F.R. §64.1200(c) or (e) within any twelve-month period.

91.    The foregoing acts and omissions of Quicken Loans, or its agents acting on its behalf, with respect to Plaintiff and the National DNC Class violated the TCPA, including but not limited to Section 227(c) and 47 C.F.R. §§ 64.1200(c) and (e).

92.    Plaintiff and the National DNC Class are entitled to an award of statutory damages of $500.00 for each violation of Section 227(c) or and 47 C.F.R. §64.1200(c) or (e), and also seek to enjoin future violations.  To the extent the violations were willful or knowing, Plaintiff and the National Residential Call Class are entitled to an award of up to $1,500.00 for each violation.

93.    Plaintiff and the National DNC Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

### THIRD CAUSE OF ACTION

#### VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT

#### (ON BEHALF OF PLAINTIFF AND THE NATIONAL RESIDENTIAL CALL CLASS)

94.     Plaintiff restates, realleges, and incorporates by reference the foregoing paragraphs.

95.     Plaintiff and the members of the Quicken Loans DNC Class are "persons" and "called part[ies]" under the TCPA.

96.     Plaintiff Nece is the owner and subscriber of residential telephone number (727) 785-7355.

97.     47 C.F.R. §§ 64.1200(d) provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf that person or entity." The procedures instituted must at least meet the following minimum standards before **any** telemarketing call to a residential telephone subscriber can be made:

> (1) **Written policy.** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) **Training of personnel engaged in telemarketing.** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) **Recording, disclosure of do-not-call requests.** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing

22

purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) **Identification of sellers and telemarketers.** A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) **Affiliated persons or entities.** In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) **Maintenance of do-not-call lists.** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. §§ 64.1200(d)(1) – (6).

98.     Quicken Loans initiated telemarketing calls to Plaintiff and the members of the National Residential Call Class without first instituting proper procedures for maintaining a list of persons who request not to receive telemarketing calls from Quicken Loans and fails to meet the minimum standards set forth in 47 C.F.R. §§ 64.1200(d), including subsections (2) (3), (4) and (6). Quicken Loans is prohibited from making **any** residential telephone calls to **any**

residential telephone subscriber until it first institutes these procedures.

99.     Quicken Loans fails to maintain procedures requiring its individual telemarketers to identify themselves by name when making telemarketing calls on behalf of Quicken Loans, in violation of 47 C.F.R. §§ 64.1200(d)(4). Quicken Loan's telemarketers failed to identify themselves in calls to Plaintiff Nece.  Quicken Loans' prerecorded voice calls also fail to identify the name of the individual caller calling on behalf of Quicken Loans.

100.    Quicken Loans fails to maintain proper procedures to record requests by Plaintiff and National Residential Call Class members not to be called by Quicken Loans *at the time those requests were made* and to place the subscriber's name and telephone number on Quicken Loan's internal do-not-call list, Quicken Loans further fails to honor residential subscribers do-not-call requests within a reasonable time.  This conduct violates of 47 C.F.R. §§ 64.1200(d)(3) and 47 C.F.R. §§ 64.1200(e).

101.    Quicken Loans fails to maintain a list of customers who have requested to be placed on its do-not-call list, in violation of 47 C.F.R. §64.1200(d)(6) and 47 C.F.R. §64.1200(e).  Quicken Loans did not maintain Plaintiff Nece's request to be placed on its do-not-call list.

102.    On information and belief, Quicken Loans does not properly inform and train its employees engaged in telemarketing in the existence and use of the do-not-call list, in violation of 47 C.F.R. §§ 64.1200(d)(2) and 47 C.F.R. §64.1200(e).

103.    If Quicken Loans properly recorded do-not-call requests on a Quicken Loans' do-not-call list at the time the requests were made and properly trained its employees in the use of its do-not-call list and properly maintained any such list, Plaintiff and others would not

receive the voluminous, incessant and harassing telemarketing calls made by Quicken Loans complained of in this Complaint.

104.    The foregoing acts and omissions of Quicken Loans, or its agents acting on its behalf, with respect to Plaintiff and the National DNC Class violated the TCPA, including but not limited to Section 227(c) and 47 C.F.R. §§ 64.1200(d) and (e).

105.    Plaintiff and the National Residential Call Class are entitled to an award of statutory damages of $500.00 for each violation of TCPA Section 227(c) and 47 C.F.R. §64.1200(d) and (e), and also seek to enjoin future violations.  To the extent the violations were willful or knowing, Plaintiff and the National Residential Call Class are entitled to an award of up to $1,500.00 for each violation.

106.    Plaintiff and the National Residential Call Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a common fund or similar theory.

## FOURTH CAUSE OF ACTION

### VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT

#### (ON BEHALF OF PLAINTIFF AND THE QUICKEN LOANS DNC CLASS)

107.   Plaintiff restates, realleges, and incorporates by reference all of the foregoing paragraphs.

108.   Plaintiff and the members of the Quicken Loans DNC Class are "persons" and "called part[ies]" under the TCPA.

109.   Section 227(c) of the TCPA and 47 C.F.R. §§ 64.1200(d) prohibit telemarketing calls to persons who have made a request to be placed on a Do-Not-Call registry or list that must be maintained by each company who initiates or causes telemarketing calls to be made.

110.   Even if Quicken Loans has instituted the procedures mandated by 47 U.S.C. §64.1200(d), which Plaintiff disputes and pleads in Count III, Plaintiff and the Quicken Loans DNC Class directed Quicken Loans, or its agents, to not call their telephone numbers, but Quicken Loans did not honor those requests within a reasonable time.

111.   Quicken Loans did not record and maintain Plaintiff's and Quicken Loans DNC Class members' requests not to receive calls from Quicken Loans at the time the request was made as required by 47 C.F.R. §64.1200(d)(3) and (6).

112.   Calls from Quicken Loans continued long after the date Quicken Loans was required to place and maintain Plaintiff's name and phone number on its internal do-not-call list. Thus, if Quicken Loans did record and maintain Plaintiff's name and number on its do not call list, then its violations were clearly intentional as it continued to call and harass Plaintiff and others.

113.     Quicken Loans, or its agents, called Plaintiff's residential landline telephone number listed on the National DNC Registry many times beginning on or about November 30, 2012 and persisting for an unreasonably long period of time. Those calls by Quicken Loans persisted even after Plaintiff demanded, both orally and it writing, that Quicken Loans cease calling her telephone number and after she advised Quicken Loans that her telephone number was listed on the National DNC Registry.

114.     Quicken Loans, or an agent calling on Quicken Loans' behalf, made more than one commercial telemarketing call to Plaintiff and the each member of the Quicken Loans DNC Class in violation of Section 227(c) and 47 C.F.R. §64.1200(d) or (e) within any twelve-month period.

115.     Plaintiff and the National Residential Call Class are entitled to an award of statutory damages of $500.00 for each violation of TCPA Section 227(c) and 47 C.F.R. §64.1200(d) and (e). To the extent the violations were willful or knowing, Plaintiff and the National Residential Call Class are entitled to an award of up to $1,500.00 for each violation.

116.     Plaintiff and the Quicken Loans DNC Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and all others similarly situated, pray for judgment against Quicken Loans as follows:

A.      An order certifying this case as a class action under FED. R. CIV. P. 23(a), (b)(2) and (b)(3), establishing the Classes as the Court deems appropriate, and appointing Plaintiff and her counsel to represent the Classes;

B.      An order declaring that Quicken Loans', or its agents', acts and practices violate the TCPA;

C.      Statutory damages pursuant to the TCPA of $500.00 for each violation of the TCPA, and up to $1,500.00 for each of Quicken Loans' or its agents' willful and/or knowing violations of the TCPA, as provided by statute;

D.      A permanent injunction to enjoin Quicken Loans', and its agents', future violations of the TCPA; and

E.      Reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to the extent authorized by law.

DATED:  September 7, 2016

David P. Mitchell, Esquire
Florida Bar No. 067249
**MANEY & GORDON, P.A.**
5402 Hoover Boulevard
Tampa, FL 33634
Tel. (813) 888-6700
Email:  david@mitchellconsumerlaw.com

**TUSA P.C.**
Joseph S. Tusa  (*pro hac vice forthcoming*)
P.O. Box 566
53345 Main Road, Ste. 10-1
Southold, NY  11971
Tel. (631) 407-5100
Email:  joseph.tusapc@gmail.com

**GREGORY S. DUNCAN, ESQ.**
Gregory S. Duncan  (*pro hac vice forthcoming*)
412 East Jefferson Street
Charlottesville, VA  22902
Tel. (434) 979-8556
Email:  gregdun@ntelos.net

*Attorneys for Plaintiff*
*and proposed Class Counsel*

**Federal Communications Commission**



## FEDERAL COMMUNICATIONS COMMISSION
## WASHINGTON, D.C. 20554

April 6, 2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Quicken Loans
20555 Victor Highway
Livonia MI  48150

      Re:  File No. EB-07-TC-1144

Dear Sir or Madam:

      This is an official **CITATION**, issued pursuant to section 503(b)(5) of the Communications Act of 1934, as amended (the Communications Act), 47 U.S.C. § 503(b)(5), for violations of the Federal Communications Commission's rules that govern telephone solicitations and unsolicited advertisements.[1]  As explained below, you may appeal this citation. In addition, future violations of the Commission's rules in this regard may subject you and your company to monetary forfeitures.

      Attached are consumer complaints regarding telemarketing calls that your company,  or an entity acting on behalf of your company, made to telephone lines that are contained in the National Do-Not-Call Registry.  These complaints indicate that your company, acting under your direction, has violated the Commission's rules regarding telephone solicitations.  *See* 47 C.F.R. § 64.1200(c)(2).

      Section 64.1200(c)(2) of the Commission's rules generally prohibits the delivery of telephone solicitations to residential telephone numbers that are contained in the National Do-Not-Call Registry except in certain limited situations.  Under the Communications Act and the Commission's rules, a "telephone solicitation" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."[2]  Calls made by or on behalf of tax-exempt nonprofit groups are not considered to be telephone solicitations.  Similarly, calls that are made

---

[1] 47 C.F.R. § 64.1200.  A copy of these rules is enclosed for your convenience.

[2] 47 U.S.C. § 227(a)(3); 47 C.F.R. § 64.1200(f)(9).



EXHIBIT

A

Federal Communications Commission

to a person who either has provided prior express invitation or permission to call[3] or has an established business relationship[4] with the caller are not considered to be telephone solicitations. Finally, the rules permit telephone solicitations to a consumer whose number is listed on the National Do-Not-Call Registry if that consumer has a personal relationship with the individual making the calls.[5]

Accordingly, under the Commission's rules, it is unlawful to deliver a telephone solicitation to a residential telephone line on the National Do-Not-Call Registry unless: (1) the call is made by or on behalf of a tax-exempt nonprofit group; (2) the call is made by a person who has a personal relationship with the called party; (3) the called party has provided signed, written consent for the call to be made; or (4) the called party has made a purchase from, or had a transaction with, the caller within the 18 months immediately preceding the call or has made an inquiry or application regarding the caller's products or services within the three months immediately preceding the call, and the called party has not specifically asked the caller to stop all telemarketing calls.

Entities making telephone solicitations must honor do-not-call registrations no later than 31 days after a number is placed on the National Do-Not-Call Registry,[6] and for a period of no less than five years. To accomplish this, section 64.1200(c)(2)(i)(D) requires entities making telephone solicitations to use a version of the National Do-Not-Call Registry obtained no more than 31 days before any telephone solicitation is made, and to document this process. An entity that does not claim one of the exemptions set forth above is not liable for calling a telephone number on the National Do-Not-Call Registry only if it is able to demonstrate that it has fully complied with the Commission's standards governing use of the National Do-Not-Call Registry

---

[3] Prior express invitation or permission to call a number contained on the National Do-Not-Call Registry must be evidenced by a signed, written agreement between a consumer and seller. The agreement must include both the consumer's consent to be called by the particular seller and the telephone number to which such calls may be placed. 47 C.F.R. § 64.1200(c)(2)(ii).

[4] An "established business relationship" means "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(3). The established business relationship exception does not apply when a telephone subscriber has made a company-specific do-not-call request. A company-specific do-not-call request terminates an established business relationship for telemarketing purposes even if the requester continues to do business with the company. 47 C.F.R. § 64.1200(f)(3)(i); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd 8752, 8766 n.47, 8770 n.63 (1992); *see also* H.R. Rep. 102-317, 1st Sess., 102nd Cong. at 15 (1991); *Charvat v. Dispatch Consumer Services, Inc.*, 95 Ohio St. 3d 505, 769 N.E.2d 829 (2002).

[5] 47 C.F.R. § 64.1200(c)(2)(iii). A "personal relationship" exists if the recipient of the call is a "family member, friend, or acquaintance of the telemarketer making the call." 47 C.F.R. § 64.1200(f)(11).

[6] The 31-day requirement applies to telephone solicitations made on or after January 1, 2005. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, 19 FCC Rcd 19215 (2004). Previously, the Commission's rules provided that do-not-call registrations had to be honored within 3 months. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd 14014, 14040, para. 38 (2003). The 3-month provision applied to telephone solicitations made before January 1, 2005.

### Federal Communications Commission

as set out in section 64.1200(c)(2)(i)(A)-(E) of the rules, and that the particular telephone solicitation call was the result of error.

**If, after receipt of this citation, you violate the Communications Act or the Commission's rules in any manner described herein, the Commission may impose monetary forfeitures not to exceed $11,000 for each such violation or each day of a continuing violation.** [7]

You may respond to this citation within 30 days from the date of this letter either through (1) a personal interview at the Commission's Field Office nearest to your place of business, or (2) a written statement. You may use this response to appeal this citation. For example, you may claim that you are exempt from the telephone solicitation rules,[8] that you downloaded and used the National Do-Not-Call Registry in compliance with our rules but the person's telephone number was not on that version of the Registry, or that the calls were made in error and should be covered by the Commission's safe harbor provisions, 47 C.F.R. § 64.1200(c)(2)(i). In addition, your response should specify the actions that you are taking to ensure that you do not violate the Commission's rules governing telephone solicitation and unsolicited advertisements, as described above.

**You may schedule a personal interview at the nearest Commission field office. These offices are located in:  Atlanta, GA; Boston, MA; Chicago, IL; Columbia, MD; Dallas, TX; Denver, CO; Detroit, MI; Kansas City, MO; Los Angeles, CA; New Orleans, LA; New York, NY; Philadelphia, PA; San Diego, CA; San Francisco, CA; Seattle, WA; and Tampa, FL.  Please call Al McCloud at 202-418-2499 if you wish to schedule a personal interview. You should schedule any interview to take place within 30 days of the date of this letter. You should send any written statement within 30 days of the date of this letter to:**

> Kurt A. Schroeder
> Deputy Chief
> Telecommunications Consumers Division
> Enforcement Bureau
> Federal Communications Commission
> 445-12th Street, S.W., Rm. 4-C222
> Washington, D.C.  20554

### Reference File No.  EB-07-TC-1144 when corresponding with the Commission.

Reasonable accommodations for people with disabilities are available upon request. Include a description of the accommodation you will need including as much detail as you can. Also include a way we can contact you if we need more information.  Please allow at least 5 days advance notice; last minute requests will be accepted, but may be impossible to fill.  Send an e-mail to fcc504@fcc.gov or call the Consumer & Governmental Affairs Bureau:

---

[7] See 47 C.F.R. § 1.80(b)(3).

[8] See 2003 Order, 18 FCC Rcd at 14042-49; 47 C.F.R. § 64.1200(f)(9) (exceptions to definition of "telephone solicitation").

**Federal Communications Commission**

For sign language interpreters, CART, and other reasonable accommodations: 202-418-0530 (voice), 202-418-0432 (tty);

For accessible format materials (braille, large print, electronic files, and audio format): 202-418-0531 (voice), 202-418-7365 (tty).

Under the Privacy Act of 1974, 5 U.S.C. § 552(a)(e)(3), we are informing you that the Commission's staff will use all relevant material information before it, including information that you disclose in your interview or written statement, to determine what, if any, enforcement action is required to ensure your compliance with the Communications Act and the Commission's rules.

The knowing and willful making of any false statement, or the concealment of any material fact, in reply to this citation is punishable by fine or imprisonment under 18 U.S.C. § 1001.

Thank you in advance for your anticipated cooperation.

Sincerely,


Kurt A. Schroeder
Deputy Chief, Telecommunications Consumers Division
Enforcement Bureau
Federal Communications Commission

Enclosures

**verizon**
**Verizon Message Center**

Thursday, Dec 24 at 7:21 AM

**From:** Verify@DonotCall.gov

**To:** eanece@verizon.net

**Subject:** National Do Not Call Registry - Your Registration Is Confirmed

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 7355 on October 24, 2007. Most telemarketers will be required to stop calling you 31 days from your registration date. *(Land Line )* ✱

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry. *( 727 - 785 - 7355 )* ✱

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

**EXHIBIT**

tabbies

*B*

EILEEN A. NECE
4823 INVERNESS CT., #101
PALM HARBOR, FL.
34685-4100

(Phone - 727-785-7355 Unlisted
& On Do Not Call List)

December 11, 2012

Attn: C.E.O.
Quicken Loans Headquarters
1050 Woodward Avenue
Detroit, MI.  48226-1906

RE: HARASSMENT & STALKING

To Whom It May Concern:

*Recently I filled out a "Contact" form to find out more about
Quicken Loans.*

Once I discovered that your company does not have a local branch
that I could visit in person, and all the complaints filed
against you with the Better Business Bureau in the last 3 years
I changed my mind about doing business with you.

Each time one of your representatives called me, I told them I
was not interested and preferred to deal locally.  That did
not stop them from calling me daily, regardless of how many
times I told them I do not want to deal with your company so
stop calling me, it did not do any good.  Your staff persisted
in harassing and stalking me daily, even though I told them I
was busy and to stop calling me, as I would deal locally!
If I could press criminal charges against your company for
harassment and stalking I definitely would.  Meanwhile, I am
notifying all Government Agencies if other people have similar
problems with your company!

*Eileen A. Nece*

CC:  F.B.I.

EXHIBIT
C



**Florida Department of Agriculture and Consumer Services**
**Division of Consumer Services**

**FLORIDA DO NOT CALL**
**COMPLAINT FORM**

s. 501.059, Florida Statutes

ADAM H. PUTNAM
COMMISSIONER

*1212-52176/CLR*

Please Remit Complaint Form to:

Florida Department of Agriculture and
Consumer Services
Do Not Call Program
2005 Apalachee Parkway       CLR
Terry Lee Rhodes Building
Tallahassee, FL 32399-6500

www.800helpfla.com
1-800-HELP-FLA (435-7352) FL Only
850-410-3800 Calling Outside Florida

Statement: I answered the telephone and received a telephonic sales call (unsolicited or prerecorded). I want the Department to take appropriate action. I acknowledge that all information I provide with my complaint is a matter of public record and is not considered confidential. Moreover, I understand that not all sales calls are a violation, for instance, when: 1. a prior or existing business relationship exists; 2. in response to an express request of the person called; 3. from a newspaper publisher; 4. in connection with an existing debt or contract; 5. a real estate agent responds to my advertisement. Further, I understand that calls from political parties, research/survey companies, collection agencies and organizations requesting a donation generally do not sell products or services and therefore are not making a sales call in violation. I understand that the ability of the Department to successfully pursue action depends, in part, on the accuracy and timeliness of the information that is provided.

## YOUR INFORMATION (CONSUMER)

☐ Mr.   ☐ Mrs.   ☒ Ms.

Full Legal Name: **Eileen A. Nece**

Address: **4823 Inverness Court, #101**

City: **Palm Harbor**   State: **FL.**   Zip Code: **34685** - **4100**

Residential Telephone Number the Business Called: ( **727** ) **785** - **7355**

## SALES CALL INFORMATION (BUSINESS)

Date of Call: Please note: One date of call per complaint form   **12** / **13** / **2012**

Time of Call: **1** : **15**   ☐ AM ☒ PM

Name of Business (Solicitor): **Quicken Loans**

Business Telephone Number: ( **313** ) **373** - **2064**

Product or Service(s) Offered: **Loans**

Address (If provided): **Unknown**

City: _____   State: _____   Zip Code: _____

Caller Name (If provided): **Unknown**

| | | |
|---|---|---|
| ☐ Yes | ☒ No | The (sales) call was a prerecorded sales call. |
| ☒ Yes | ☐ No | The (sales) call was made to my telephone number on the Florida Do Not Call List. |
| ☒ Yes | ☐ No | I have Caller ID and the business telephone number identified above is from my Caller ID. |
| ☐ Yes | ☒ No | The business telephone number identified above was provided to me verbally by the caller or was included in the prerecorded sales call. |
| ☐ Yes | ☒ No | The caller immediately identified him/herself and the business they represent. |
| ☒ Yes | ☐ No | I would be willing to testify in court or a hearing, if necessary |

Comments (optional): Please briefly describe any relevant information about the (sales) call.

**Have gotten over 2 dozen phone calls from Quicken Loans after I told them**
**I was not interested in one weeks time.   Different numbers showed up on**
**my Caller ID.   This company needs to be held liable for harassment/stalking!**

Signature: *[signature]*   Date: **12/13/12**

☐ Yes, I would like to receive the Florida Consumer E-Newsletter at the following email address: **(N/A)**
The newsletter provides monthly consumer tips and information and is only distributed by email.

**ENCLOSURE**

*(stamped vertically: 2012 DEC 17   PM 1:26   DIVISION OF CONSUMER SERVICES)*

DACS-10402 Rev. 07/07



**EXHIBIT**
D

 **Quicken Loans®**
Engineered to Amaze®

1050 Woodward Avenue   Detroit, MI 48226 | www.quickenloans.com

March 8, 2013

Florida Department of Agriculture & Consumer Services
Division of Consumer Services
2005 Apalachee Pkwy
Tallahassee, FL 32399-6500

Re: Reference #: 1212-52176 / CLR  -  Eileen A. Nece

To whom it may concern:

Thank you for allowing us the opportunity to address Ms. Nece's concerns. We regret that she is dissatisfied with the service we provided.

In December 2012, we received Ms. Nece's contact information through an online inquiry form. During this process, Ms. Nece provided her name, telephone number, e-mail address, and answered some basic questions to have us contact her about loan options  By providing this information and hitting the submit button, Ms. Nece gave permission to have Quicken Loans contact her by telephone and e-mail.

We made several attempts to follow up with Ms. Nece regarding her inquiry  The purpose of our calls was to provide Ms. Nece with the mortgage loan information that she requested. We apologize for any unwanted phone calls and have removed Ms. Nece's information from our marketing campaigns. As such, Ms. Nece will not receive any additional calls or correspondence from Quicken Loans, unless she opts into our services again or completes an online inquiry form with one of lead providers.

If you have any other questions, please contact me directly at 313-373-5139.

Respectfully,

Jeff Szardi
Client Relations / Executive Office

 EXHIBIT
E

Direct: (313) 373-5139   Fax: (877) 380-1060   Email: Jeffszardi@quickenloans.com

