## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| EILEEN NECE,<br><br>       Plaintiff,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>       Defendant. | No. 8:16-cv-02605-SDM-TBM |

### DEFENDANT QUICKEN LOANS INC.'S MOTION TO DISMISS

Defendant Quicken Loans Inc., pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss the Complaint (ECF No. 1), and says:

1. This case arises out of calls allegedly placed by Quicken Loans to Plaintiff.

2. Plaintiff alleges that Quicken Loans violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and 47 C.F.R. § 64.1200 *et seq.*

3. Plaintiff fails to plead that Quicken Loans made a "prerecorded" or "artificial voice" call to her, or that Quicken Loans did not have Plaintiff's prior express consent to call her.

4. Plaintiff also fails to plead that Quicken Loans lacked compliant "do-not-call" procedures or otherwise violated 47 C.F.R. § 64.1200 *et seq.*

5. Thus, the Court should dismiss the Complaint in its entirety.

6. In further support of this Motion, Quicken Loans relies upon and incorporates the following Memorandum of Law.

**WHEREFORE**, Defendant Quicken Loans Inc. requests entry of an order dismissing the Complaint in its entirety and granting all further appropriate relief.

**MEMORANDUM OF LAW**

Pursuant to FED. R. CIV. P. 12(b)(6), Quicken Loans Inc. hereby moves to dismiss the Complaint (ECF No. 1) of Plaintiff Eileen Nece in its entirety because it fails to state a claim for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, upon which relief can be granted.

**INTRODUCTION**

By her own admission, Plaintiff went shopping for a mortgage loan in 2012. Compl. Exs. C, E. As part of her efforts, she filled out a form inviting Quicken Loans to call her at her home phone number so she could "find out more about" the company and its products. Compl. Ex. C. Quicken Loans did just that, at the phone number Plaintiff knowingly and voluntarily provided. *Id*. Ex. E. In all, Plaintiff claims to have received "over 2 dozen phone calls from Quicken Loans" over about a two-week period in late November and early December 2012. Compl. ¶¶ 43, 55, 57. Importantly, while she is quick to allege "dozen[s]" of calls, Plaintiff pleads no facts about the dates and circumstances of any of them save the first one. Eventually, after she purportedly "changed [her] mind" about doing business with Quicken Loans, Plaintiff decided that the alleged calls constituted "harassment" and "stalking." So, she submitted two complaints to state and county authorities in Florida, and another to Quicken Loans itself. *Id*. ¶ 55 & Ex. C, D. And now, almost four years later, Plaintiff attempts to make a federal case of it, bringing the instant lawsuit for purported violations of the TCPA. This effort fails at its inception. Plaintiff's own pleading confirms that she has no cognizable TCPA claim under any of her theories.

First, Plaintiff purports to assert a claim (Count I) under a TCPA provision applicable only to "prerecorded" calls. Compl. ¶ 76 (citing 47 U.S.C. § 227(b)(1)(B)). But she fails to plead that Quicken Loans made a single prerecorded call to her. To the contrary, in her Complaint and

its attachments, Plaintiff concedes that Quicken Loans' calls to her were "live," *not* prerecorded. That concession is fatal to Count I.

In Count II, Plaintiff alleges a violation of Section 227(c) and 47 C.F.R. §§ 64.1200(c) and (e) predicated upon calls to her home number allegedly made without her "consent" when that number was allegedly on the national do-not-call list. But this claim is defective because Plaintiff pleads that she *gave* her consent when she filled out the form and provided her home number. Compl. ¶ 45 & Ex. C. Recognizing this, Plaintiff attempts to salvage her claim by alleging that she later "revoked" her consent by requesting that Quicken Loans add her number to its internal do-not-call list. *Id.* ¶ 45. Of course, one can only revoke something that has been provided in the first place. And Plaintiff's revocation allegations cannot save Count II because the applicable TCPA regulations give a defendant thirty days to honor any request not to be called. *See* 47 C.F.R. § 64.1200(d)(3). Here, according to her own allegations, the entire period in which Plaintiff claims she received unwanted calls from Quicken Loans was barely even half of that thirty-day period. Compl. ¶¶ 43, 57. So, there is (and can be) no violation.

Finally, Plaintiff asserts two unsubstantiated claims (Counts III and IV) based on Quicken Loans' purported failure to have adequate internal processes for maintaining an internal do-not-call list. Plaintiff's bald allegations—which say absolutely nothing about Quicken Loans' actual policies beyond a conclusory statement that they are inadequate—fall well short of the factual allegations necessary to state a claim under Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And, even if this were not enough to dismiss Counts III and IV (and it is), the record confirms that Plaintiff's allegations are implausible. While Plaintiff references and attaches her various complaint letters and Quicken Loans' responses, she surgically excludes from her exhibits a document referenced in her Complaint which details and attaches Quicken Loans'

3

internal do-not-call policy and procedures. This Court may consider that document in ruling on this Motion (because Plaintiff references it in her Complaint (Compl. ¶¶ 58-59)), and it negates Plaintiff's conclusory allegations that Quicken Loans lacks internal do-not-call policies. Moreover, Plaintiff's own allegations demonstrate that Quicken Loans had and followed its do-not-call procedures in her case. Specifically, Plaintiff alleges a series of events in which she asked Quicken Loans to contact her about doing business, "changed [her] mind" almost immediately, received calls from Quicken Loans over the next two weeks, and then never heard a word from Quicken Loans again at any time between December 2012 and the filing of this lawsuit almost four years later. That does not give rise to a plausible claim of inadequate procedures to implement an internal do-not-call list. Instead, the only plausible inference is the opposite: that Quicken Loans had the requisite procedures, and they worked in Plaintiff's case.

For all these and the additional reasons set forth below, the Complaint fails as a matter of law and conceded fact, and it must be dismissed.

## BACKGROUND[1]

**A.      Plaintiff's Factual Allegations**

In late 2012, Plaintiff—as she herself tells the story—"filled out a 'Contact' form to find out more about Quicken Loans." Compl. Ex. C. In the form, Plaintiff "provided her name, telephone number, [and] e-mail address, and answered some basic questions to have [Quicken Loans and others] contact her about loan options." *Id*. Ex. E.

---

[1] Quicken Loans' recitation of the factual background assumes, as it must, the truth of Plaintiff's allegations solely for purposes of this Motion under Rule 12(b)(6). *See Franklin v. Curry*, 738 F.3d 1246, 1248 (11th Cir. 2013). In the event this matter proceeds beyond the Rule 12(b)(6) stage (and it should not), Quicken Loans reserves its right to contest Plaintiff's statement of the facts, including by demonstrating, among other things, that her allegations about the number of calls, the time period of the calls, and the purported use of prerecorded messages are false.

4

Following that submission, Plaintiff alleges that Quicken Loans started contacting her by telephone at the home number she provided "[o]n or about November 30, 2012" in order to market "its mortgage and loan products and services." Compl. ¶ 43. However, Plaintiff says that she "changed [her] mind about doing business with [Quicken Loans]" after discovering that the company "does not have a local branch that [she] could visit in person." Compl. Ex. C. She also alleges that she "changed [her] mind" based on unspecified "complaints" filed with the Better Business Bureau. *Id*. Plaintiff alleges that, when Quicken Loans called her for the first time on or about November 30, 2012, she told the caller "that she was not interested in doing business with Quicken Loans." Compl. ¶ 44.

After this call, Plaintiff complains that Quicken Loans did not "immediately cease calling her." *Id*. ¶ 46. Instead, she alleges that Quicken Loans made several dozen additional calls to her home phone, though she does not allege the date, content, or factual circumstances of any of those calls. Thereafter, on December 11, 2012 (less than two weeks after the first alleged telephone call), Plaintiff wrote a letter to Quicken Loans' CEO complaining that Quicken Loans' calls to her constituted "harassment and stalking." *Id*. Ex. C. Plaintiff also submitted complaints against Quicken Loans to the Florida Department of Agriculture and Consumer Services on December 13, 2012 (Compl. ¶ 55) and to the Pinellas County Department of Justice & Consumer Services on December 17, 2012 (*id*. ¶ 57). In the former letter complaint, Plaintiff checked "No" in the box asking whether the subject calls were "prerecorded." *Id*. Ex. D. By contrast, in her Complaint in this action, Plaintiff alleges the opposite, claiming that Quicken Loans "makes telephone calls utilizing prerecorded voice messages." Compl. ¶ 50.

Plaintiff pleads that Quicken Loans responded to each of her complaints, but (conveniently) only attaches "[t]he last" of those response letters, dated March 8, 2013, to her

5

Complaint. *Id*. ¶ 59 & Ex. E. The other response letters, dated December 27, 2012 in response to the Pinellas County Department of Justice & Consumer Services, and January 28, 2013 in response to the Florida Department of Agriculture and Consumer Services, are not attached to the Complaint. But they are referenced in the Complaint (Compl. ¶¶ 58-59). As such, this Court may consider the responsive letters in ruling on this Motion.[2]

As relevant here, the December 27, 2012 letter contained Quicken Loans' confirmation that it had "opted Ms. Nece out of future contact with Quicken Loans" and that "Ms. Nece will not receive future contact from Quicken Loans, unless she opts into our services in the future." Courtney Dec. Ex. 1. Similar language appears in Quicken Loans' other response letters, including the March 8, 2013 letter exhibited with the Complaint. Compl. Ex. E. Moreover, with its January 28, 2013 response letter, Quicken Loans included a copy of its corporate "Do Not Call" policy, which includes the maintenance of an internal "Do Not Call" list in addition to the national "Do Not Call" registry. Courtney Dec. Ex. 2 at 2-3. Consistent with the statements Quicken Loans made in its response letters to her complaints, Plaintiff does not allege receiving any further calls from Quicken Loans after making her letter complaints in mid-December of 2012.

**B.    Plaintiff's Claims**

On September 8, 2016, Plaintiff filed the instant Complaint, asserting four separate causes of action for purported violations of the TCPA.

---

[2] In ruling on a motion to dismiss, this Court may consider "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Despite referencing Quicken Loans' multiple response "letters" in her Complaint (Compl. ¶¶ 58–59), Plaintiff selectively attaches to her Complaint only the "last" such letter. *Id.* Ex. E. Quicken Loans submits the other letters "referenced" in the Complaint as attachments to the Declaration of Amy Courtney.

The first count (Compl. ¶¶ 73-83) asserts a violation of 47 U.S.C. § 227(b)(1)(B), which makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." This claim, as demonstrated below, fails for want of allegations of calls with prerecorded messages purportedly made by Quicken Loans without Plaintiff's consent. *See* Part I, *infra*.

The second count (Compl. ¶¶ 84-93) asserts a violation of "Section 227(c) of the TCPA and 47 C.F.R. § 64.1200(c) and (e)," which Plaintiff characterizes (incorrectly) as "prohibit[ing] telemarketing calls to persons who have registered their telephone numbers with the National DNC Registry and who have either: (i) not provided their written and signed prior express consent to receive calls; or (ii) revoked any previously-given consent." *Id*. ¶ 88.[3] This claim fails as a matter of law because Plaintiff pleads her invitation and consent to calls from Quicken Loans, and the regulation gives defendants thirty days to honor any request "not to receive calls." 47 C.F.R. § 64.1200(d)(3). This is fatal here. Plaintiff does not allege a single call received more than thirty days after she allegedly "revoked" her "previously-given consent" by requesting not to receive further calls from Quicken Loans. Compl. ¶ 88.

The third count (Compl. ¶¶ 94-106) asserts a violation of 47 C.F.R. § 64.1200(d)'s provision that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for

---

[3] "[W]ritten and signed prior express consent to receive calls" is a standard inapplicable to any of Plaintiff's four claims. Prior to October 2013, the TCPA required only prior express consent (which need not be written) to place telemarketing calls using an artificial or prerecorded voice. *See In the Matter of Rules & Regulations Implementing the TCPA,* Report & Order, 30 F.C.C.R. 7961, 8014-15 ¶ 102 (2015). And 47 C.F.R. § 64.1200(c) permits calls to individuals on the National Do-Not-Call list with the "subscriber's prior express invitation or permission." 47 C.F.R. § 64.1200(c)(ii).

7

maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." That claim fails for want of plausible factual allegations to support it. The very documents Plaintiff references in her Complaint—but conveniently fails to attach—reveal that Quicken Loans supplied its procedures for maintaining and complying with the internal do-not-call regulations four years ago. Courtney Dec. Ex. 2 at 2-3. And, consistent with those procedures, Plaintiff's allegations plead no calls to the subject phone number at any time over the last four years.

Plaintiff's final cause of action (Compl. ¶¶ 107-116) complains that, "[e]ven if Quicken Loans has instituted the procedures mandated by 47 [C.F.R.] § 64.1200(d)," Quicken Loans remains liable because it supposedly "did not honor" Plaintiff's request not to be called "within a reasonable time." *Id*. ¶ 110. Plaintiff avers generally that "[c]alls from Quicken Loans continued long after the date Quicken Loans was required to place and maintain Plaintiff's name and phone number on its internal do-not-call list," *id*. ¶ 112, but Plaintiff does not specify what "date" that is or reconcile this general allegation with the fact that her Complaint does not allege a single call from Quicken Loans outside of the approximately two-week period between November 30, 2012 and her December 17, 2012 complaint to the Department of Justice & Consumer Services.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A

8

plaintiff must demonstrate more than a "mere possibility that the defendant acted unlawfully." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009). Instead, she must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.  COUNTS I AND II MUST BE DISMISSED BECAUSE PLAINTIFF DOES NOT PLEAD ANY ARTIFICIAL OR PRERECORDED CALLS AND ALLEGES HER CONSENT TO BE CALLED.**

In the first count of her Complaint, Plaintiff alleges that Quicken Loans violated Section 227(b)(1)(B) of the TCPA by making calls to her with an "artificial or prerecorded voice" to deliver a message without her "prior express consent." Compl. ¶ 75 (citing 47 U.S.C. § 227(b)(1)(B)). Plaintiff's own allegations confirm that her claim fails on *both* fronts—she fails to plead any calls made with an artificial or prerecorded voice, and concedes that she had given her "prior express consent" anyway. Count II, which likewise depends on calls made without the recipient's "prior express invitation or permission," fails for the same reason.

First, Plaintiff pleads no factual allegations or other material capable of raising her claim of "artificial or prerecorded voice" calls "above the speculative level." *Twombly*, 550 U.S. at 555-56. Instead, the complaint merely makes boilerplate assertions—not even connected to any specific calls—that "Quicken Loans makes telephone calls utilizing prerecorded voice messages," that "Quicken Loans makes telephone calls utilizing artificial voice messages," and that "[s]ome" of the calls to Plaintiff fit within one of these categories (though Plaintiff does not even say which). Compl. ¶¶ 49-51. But these insufficient boilerplate allegations are contradicted by the December 13, 2012 complaint Plaintiff attaches to the instant Complaint. There, Plaintiff clearly indicated "No" when asked whether "[t]he (sales) call was a prerecorded sales call." Compl. Ex. D. The Court's "duty to accept the facts in the complaint as true does not require [it]

9

to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). Here, Plaintiff's own exhibit clearly shows her denying a prerecorded call.

Consistent with this, Plaintiff does not allege a single prerecorded voice call or a single artificial voice call—only a perfunctory boilerplate allegation that she may have received either, or maybe both. This is not enough "factual content" to "allow[] the court to draw the reasonable inference that the defendant" made any artificial or prerecorded voice calls to Plaintiff. *Iqbal*, 556 U.S. at 678. Courts have held, for example, that "to satisfy the *Twombly/Iqbal* standard with respect to . . . a TCPA claim, a plaintiff must plead such facts as (i) the number of allegedly unlawful calls received, (ii) the approximate dates and times of these calls, and (iii) circumstances that would support the inference that these calls were placed with . . . an artificial or prerecorded voice." *Wallack v. Mercantile Adjustments Bureau, Inc.*, No. 14-10387, 2014 WL 1515852, at *2 (E.D. Mich. Apr. 18, 2014) (citing, *e.g.*, *Duran v. Wells Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) (dismissing TCPA claim where plaintiff alleged violative calls "in a conclusory manner" but pled "no facts whatsoever about any automated or pre-recorded calls Defendant allegedly made")). Plaintiff does not supply this basic factual material with respect to any call she claims is "allegedly unlawful" on grounds of incorporating an artificial or prerecorded voice. And, perhaps more tellingly, the one call as to which Plaintiff pleads the date and other details—the alleged November 30, 2012 call—was, by her own admission, a live call from a Quicken Loans "representative." Compl. ¶ 44. She has thus failed to plead a TCPA artificial/prerecorded voice violation with the requisite plausibility.

In an apparent attempt to cover up the pleading defects in her TCPA claims, Plaintiff adorns her Complaint with a series of wide-ranging allegations about a supposed "high-pressure sales culture at Quicken Loans." Compl. ¶ 35. Plaintiff claims that Quicken Loans' employees are told "to work the phones hard" and "spend a minimum of five hours on the phone" every day. *Id*. at ¶ 36. Plaintiff further claims that these employees are "trained to use scripts" and "follow [a] process" for marketing loan products which begins with asking prospective customers "to take out a pen and a piece of paper" to write down the current rates. *Id*. at ¶¶ 37-38. While Quicken Loans denies these overheated (and unnecessary) allegations, none of them support Plaintiff's TCPA claims. *All* of them do, however, belie her bald assertions that Quicken Loans "makes telephone calls utilizing prerecorded voice messages." *Id*. at ¶ 50. Those allegations are about live calls and live agents—not prerecorded or artificial voices.

Separately, even if Plaintiff *had* sufficiently pled that Quicken Loans used an artificial or prerecorded voice (and she has not), she fails to plead that Quicken Loans lacked her "prior express consent" to contact her. Any of her contrary allegations are undermined, once again, by the exhibits she chose to attach to the Complaint. *See Griffin Indus., Inc.*, 496 F.3d at 1205–06. For example, in her December 11, 2012 letter to Quicken Loans (referenced in and attached to the Complaint), Plaintiff admitted that, "[r]ecently [she] filled out a 'Contact' form to find out more about Quicken Loans." Compl. Ex. C. And, in its responses to Plaintiff's subsequent complaints (also referenced in or attached to the Complaint), Quicken Loans responded that:

> In December 2012, we received Ms. Nece's contact information through an online inquiry form. During this process, Ms. Nece provided her name, telephone number, e-mail address, and answered some basic questions to have us contact her about loan options. By providing this information and hitting the submit button, Ms. Nece gave permission to have Quicken Loans contact her by telephone and email.

11

Compl. Ex. E. It is black-letter law that "'any telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released.'" *Murphy v. DCI Biologicals Orlando, LLC*, No. 12-1459, 2013 WL 6865772, at *5 (M.D. Fla. Dec. 31, 2013) (quoting *In the Matter of Rules & Regulations Implementing the TCPA*, Report & Order, 7 F.C.C.R. 8752, 8768 ¶ 30 (1992)) (dismissing plaintiff's TCPA claim where his prior express consent was apparent from the complaint). Plaintiff's admission that she voluntarily submitted her telephone number to Quicken Loans establishes, as a matter of law, "prior express consent to be called by" Quicken Loans. *Id*.

Plaintiff's second count, predicated on Quicken Loans' alleged calls to a number on the National Do-Not-Call list in purported violation of Section 227(c) and 47 C.F.R. § 64.1200(c), is similarly defective. TCPA regulations are clear that a defendant "will not be liable for" calling an individual who has registered her number on the National Do-Not-Call list if it "has obtained the subscriber's prior express invitation or permission" to call. 47 C.F.R. § 64.1200(c)(ii). And, according to her own allegations and exhibits, Plaintiff had given exactly that before any of the challenged calls. Again, her own Complaint concedes that she "filled out a 'Contact' form," and the exhibits confirm that she provided her "contact information through an online inquiry form" in which she "gave permission to have Quicken Loans contact her by telephone and email." Compl. Ex. C & E. Both her first and second causes of action must be dismissed on this basis.

Plaintiff attempts to avoid this result by asserting that she later "revoked any previously-given consent." Compl. ¶ 88. This effort fails. First, her allegation about revocation of consent is, of course, a concession that she gave consent in the first place. Otherwise there would be no consent for her to revoke. Second, while some courts recognize a consumer's right to revoke

consent, they are not entitled under the law to have the calls cease *instantaneously*. To the contrary, the law provides:

> If a person or entity making a call for telemarketing purposes . . . receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. <u>Persons or entities making calls for telemarketing purposes . . . must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.</u>

47 C.F.R. § 64.1200(d)(3) (emphasis added). The interplay of § 64.1200(c) and (d) is obvious: a company is free to call anyone who has given their "prior express invitation or permission" (*id*. § 64.1200(c)(2)(ii)), and if the recipient purports to "revoke" that permission by asking "not to receive calls," then the company "must record the request" and has a "reasonable" period of "thirty days" to honor it. That grace period makes perfect sense, because it naturally takes companies time to process system changes and directory updates.

Thus, Plaintiff's alleged request not to receive future calls from Quicken Loans is meaningless without well-pleaded allegations that Quicken Loans continued calling her more than thirty days *after* her alleged request—something the Complaint conspicuously declines to allege. Every call alleged in the Complaint occurred, at best, in an 18-day period between November 30, 2012 and December 17, 2012, and is therefore not actionable. Compl. ¶¶ 44-57. Counts I and II must be dismissed.

**II.   COUNTS III AND IV MUST BE DISMISSED BECAUSE PLAINTIFF DOES NOT PLEAD ANY DEFICIENCY IN QUICKEN LOANS' PROCEDURES.**

Plaintiff's third and fourth causes of action hinge on allegations that Quicken Loans supposedly failed to institute and follow an internal do-not-call policy pursuant to 47 C.F.R.§ 64.1200(d). Compl. ¶ 97. Plaintiff complains generally that "Quicken Loans fails to maintain proper procedures to record requests" from the public to be placed on a do-not-call list,

13

and purports to support those allegations with the claim that Quicken Loans supposedly failed to honor Plaintiff's request to be placed on its do-not-call list as fast as Plaintiff would have liked. *Id*. ¶ 101, 113. These claims, too, fail at the starting gate.

As a threshold matter, Section 64.1200(d) concerns only the existence of minimum procedures: "The 'violation of the regulations' is . . . the initiation of the phone call without having implemented the minimum procedures." *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 632 (6th Cir. 2009). "The regulations do not specifically proscribe actually calling an individual after the individual has requested placement on a do-not call list . . . , nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011). Thus, Plaintiff's allegations that Quicken Loans "persist[ed]" in calling Plaintiff "for an unreasonably long period of time" (Compl. ¶ 113) and supposedly "did not maintain Plaintiff Nece's request to be placed on its do-not-call list" (*id*. ¶ 101) are irrelevant. None of these allegations supports claims for violation of 47 C.F.R. § 64.1200(d) without sufficiently pleaded allegations "that the entity placing the calls failed to institute the proper procedures prior to the initiation of the call." *Simmons v. Charter Commc'ns, Inc.*, No. 15-0317, 2016 WL 1257815, at \*5 (D. Conn. Mar. 30, 2016). The failure to institute procedures is an essential element of the claim, and "[i]f a defendant can show that it had instituted the proper procedures, plaintiff's claim under subsection (d) must fail for lacking an essential element of the claim." *Id.* at \*5.

Here, again, Plaintiff alleges this essential element only in conclusory, boilerplate terms. Plaintiff makes a number of naked allegations that "Quicken Loans fails to maintain proper procedures" (*e.g.*, Compl. ¶ 100), but does not support these conclusory claims with any factual material or reference to what Quicken Loans' procedures actually are. This omission is notable

14

because, as noted, Quicken Loans supplied a copy of its Do Not Call Policy in response to Plaintiff's complaint to the Florida Department of Agriculture and Consumer Services. Courtney Dec. Ex. 2 at 5-6. Rather than confront this reality, Plaintiff simply ignores it, and invites the Court to allow her claim to proceed based on her choice to omit from her Complaint the policy Quicken Loans produced four years ago. The Court should reject that invitation. It is not enough for a plaintiff "simply [to] recite[] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[] that they were violated." *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012). Plaintiff must make clear "how" (*id.*), and Plaintiff does not do so.

In Plaintiff's fourth cause of action, Plaintiff alleges that Quicken Loans is liable for failing to honor Plaintiff's do-not-call requests "within a reasonable time" "*[e]ven if* Quicken Loans has instituted the procedures mandated by 47 [C.F.R.] § 64.1200(d)." Compl. ¶ 110 (emphasis added). But this is a concession that Quicken Loans *did* have compliant procedures in place before the date of the first alleged call to Plaintiff. That is fatal to Counts III and IV. As set forth above and confirmed in *Charvat*, this argument fails as a matter of law because there can be no violation of Section 64.1200(d) "even if" the defendant has instituted the required procedures: the failure to institute such procedures is a basic element of the claim, and thus a claim that concedes "Quicken Loans has instituted the [required] procedures" cannot even get off the ground. *Id*.

Count IV also fails even if it is construed as an attempt to plead some abstract TCPA violation untethered to Section 64.1200(d)'s procedural requirements. That is because the regulation provides for a 30-day safe harbor for an entity to "honor a residential subscriber's do-not-call request." 47 C.F.R. § 64.1200(d)(3). This is fatal to Plaintiff's claims, because the time period in which Plaintiff alleges she received calls from Quicken Loans was not even 30 days

long—stretching from November 30, 2012 at the earliest to December 17, 2012 at the latest, it was barely two weeks. *See* Compl. ¶¶ 43, 57. Even if one credits Plaintiff's allegation that she asked not "to receive any future calls" "[u]pon receiving that *first* call . . . on or about November 30" (*id*. ¶ 44), Plaintiff *still* has not pleaded around that safe harbor, because Plaintiff does not allege any calls on or after December 30. As another court held in similar circumstances:

> Taking the Plaintiff's allegations as true, she asked to be put on the Defendant's internal Do-Not-Call registry during the first phone call with the Defendant, which occurred in June of 2015. . . . At this point, the Defendant was required to honor this request, per 47 C.F.R. § 64.1200(d)(3). However, that section allows the Defendant a reasonable time to honor the request, not to exceed 30 days. The only other call the Plaintiff allegedly received from the Defendant also occurred in June of 2015. Therefore, such a call would be covered by the safe harbor provision of the FCC regulation and would not constitute a cause of action. To the extent that the Plaintiff received other calls from the Defendant outside of the 30 day window, she has not alleged such calls in her Complaint.

*Orsatti v. Quicken Loans Inc.*, No. 15-9380, ECF No. 22, slip op. at 10 (C.D. Cal. Sept. 12, 2016).

Importantly, this Court does not even need to go beyond the allegations of the complaint to dismiss Counts III and IV on this basis. Plaintiff must plead at least one call outside the thirty-day safe harbor to support her own theory, and she has not done so. *See id.*[4] That is why courts require TCPA plaintiffs to plead "the approximate dates and times" of the challenged calls—without that factual content, the Court can only speculate as to whether there has been a violation. *See Wallack*, 2014 WL 1515852, at *2; *Augustin Santander Consumer USA, Inc.*, 43 F.

---

[4] Nor could she do so consistent with Rule 11, because Quicken Loans' records confirm that it made no call to the subject number after December 14, 2012. Perhaps in recognition of this, Plaintiff declines to allege anything specific about when Quicken Loans' calls to her stopped, apparently hoping the Court will draw an inference in her favor that they persisted long enough to support her claims. But that is not a permissible inference in the absence of specific factual allegations to justify the inference. *See Twombly*, 550 U.S. at 555 (recognizing "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" the desired inference, and finding no "plausible grounds to infer" without "enough factual matter (taken as true) to suggest" the inference).

Supp. 3d 1251, 1253-54 (M.D. Fla. Aug. 7, 2012) (dismissing TCPA claim for failure to plead sufficient dates or details of challenged calls). Here, the only "approximate dates and times" supplied are the 18-day window between November 30 and December 17, 2012. That fails, on its face, to state a claim. *See Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D 287, 292 (N.D. Ill. 2014) (dismissing claim for failure to allege any calls outside grace period); *Simmons*, 2016 WL 1257815, at *514 (claim failed where defendant honored do-not-call request within thirty days). The Court can also consider the fact that Quicken Loans confirmed that it "opted Ms. Nece out of future contact with Quicken Loans" no later than December 27, 2012. Courtney Dec. Ex. 1 (first response letter to Plaintiff's complaints); *see La Grasta*, 358 F.3d at 845 (court may consider documents "referenced in the complaint"); Compl. ¶ 58 (referencing Quicken Loans' response letters to Plaintiff's complaints).

Finally, Counts III and IV are defectively pled to the extent that they allege violations of 47 C.F.R. § 64.1200(d)(4). That subsection requires that certain companies institute procedures to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." Numerous courts have concluded that there is no private right of action to enforce this section of the TCPA's implementing regulations because it a "technical and procedural" violation. *Worsham v. Travel Options, Inc.*, No. 14-2749, 2016 WL 4592373, at *7 (D. Md. Sept. 2, 2016); *Burdge v. Ass'n Health Care Mgmt.*, No. 10-0100, 2011 WL 379159, at *3–4 (S.D. Ohio Feb. 2, 2011); *Bailey*, 867 F. Supp. 2d at 842. For all of the above reasons, then, this Court should dismiss Plaintiff's internal procedural do-not-call claims for failure to state any cognizable claim for relief.

### III.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED TO THE EXTENT PLAINTIFF INVOKES IRRELEVANT STATUTORY AND REGULATORY PROVISIONS.

Plaintiff's Complaint references two additional provisions with no effort to explain their pertinence. First, in connection with three of Plaintiff's four causes of actions (Compl. ¶¶ 3-5), Plaintiff obliquely alleges that Quicken Loans' actions are also in violation of 47 U.S.C. § 227(e), a provision making it unlawful to "transmit misleading or inaccurate caller identification information with the intent to defraud." 47 U.S.C. § 227(e)(1). Nowhere does Plaintiff allege, even in conclusory boilerplate, that Quicken Loans did such things, and Section 227(e), in any event, confers no private right of action. *Compare* 47 U.S.C. § 227(e) *with id.* § 227(b)(3) and *id.* § 227(c)(5). Second, in connection with the same claims (Compl. ¶¶ 3-5, 90-92, 102, 104, 105, 114, 115), Plaintiff alleges violations of 47 C.F.R. § 64.1200(e), which applies to "wireless telephone numbers." But Plaintiff concedes that the telephone number at issue in this case is a "residential landline telephone number." *Id*. ¶ 41. Plaintiff's references to 47 U.S.C. § 227(e) and 47 C.F.R. § 64.1200(e) can thus all be ignored.

### CONCLUSION

For the foregoing reasons, Quicken Loans respectfully requests that the Court grant its Motion and dismiss the Complaint for failure to state a claim upon which relief can be granted.

Dated:  October 28, 2016                    Respectfully submitted,

*/s/ S. Douglas Knox*
J. Kirby McDonough, Fla. Bar No. 79031
S. Douglas Knox, Fla. Bar No. 849871
douglas.knox@quarles.com
QUARLES & BRADY LLP
101 E. Kennedy Blvd., Ste. 3400
Tampa, Fla. 33602
Tel.: (813) 387-0300
Fax: (813) 387-1800
kirby.mcdonough@quarles.com

18

>*/s/ Brooks R. Brown*
>Brooks R. Brown (admitted *pro hac vice*)
>W. Kyle Tayman (admitted *pro hac vice*)
>Keith Levenberg (admitted *pro hac vice*)
>GOODWIN PROCTER LLP
>901 New York Ave., N.W.
>Washington D.C. 20001
>Tel.: (202) 346-4000
>Fax: (202) 346-4444
>bbrown@goodwinlaw.com
>ktayman@goodwinlaw.com
>klevenberg@goodwinlaw.com
>
>*Attorneys for Quicken Loans Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 28, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

>*/s/ S. Douglas Knox*