UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


EILEEN NECE,

      Plaintiff,

v.                                          CASE NO. 8:16-cv-2605-T-23CPT

QUICKEN LOANS, INC.,

      Defendant.

_____/


## ORDER

      At 6:06 a.m. on December 7, 2012, Eileen Nece submitted a form on Quicken

Loans' website. The form (Doc. 117-1 at 9) requires a prospective mortgagor to

provide her name and a phone number and asks the prospective mortgagor several

questions about her "mortgage goals," including the amount she aspires to borrow.

Although some confusion appears about the exact content of her submission, Nece

undisputedly provided her name and the number for her residential landline, which

ends in 7355. During the next thirty minutes, Nece submitted either the same form

or a similar form four more times. At 6:28 a.m., Nece e-mailed Quicken:

> Do you have any local offices in Pinellas County, Florida? I prefer
> dealing with a Mortgage Broker who has a local office. I live in Palm
> Harbor, Florida.
>
> Found a house I like in my area, zip 34685 for $139,900. Will need a
> 30 Year Fixed Mortgage . . .

> Can you help me, as I need Pre-Approval [first], before a Realtor will work with me.
>
> Thank you.
>
> Eileen A. Nece [] 727-785-7355

(Doc. 40-2 at 40)

At 10 a.m., Quicken employee Brandon Pach called the 7355 number (Doc. 40-2 at 21), and a transcript (Doc. 40-2 at 42) shows that Pach introduced himself and Quicken. Nece immediately asked whether Quicken operated a local branch; Pach said "no" but attempted several times to inform Nece about a mortgage. After stating that she preferred to deal with a local lender and after mentioning the frequent Better Business Bureau complaints against Quicken, Nece said, "I'm not interested in the rates. I just don't want to deal with you at all right now," and Pach ended the call.

Soon after 4 p.m., Quicken employee Alex Dobija called Nece. (Doc. 40-2 at 44) After Dobija identified himself, Nece said, "I'm actually not interested in Quicken Loans anymore." Again, Nece mentioned the lack of a local branch and the frequent BBB complaints. Dobija responded, but Nece interjected, "[I]f you have complaints against you and it's that many, I don't even want to deal with you." Nece ended the call by saying, "I don't want to get involved [with Quicken] so I'm not going to waste your time and don't waste mine."

Two hours later, Quicken employee Ryan Matthey called. (Doc. 40-2 at 46) After Matthey identified himself, Nece repeated her reasons for preferring not to "get

involved" with Quicken.  Nece ended the call by stating, "I don't want to waste your time and I'd rather you didn't waste mine."

Three days later, on December 10, 2012, Quicken employee Alex Malinowski left a voicemail for Nece and invited Nece to call Malinowski for a quote.  An hour after the voicemail, Nece returned Malinowski's call and repeated her reasons for preferring not to borrow from Quicken.  Malinowski's attempt to explain the BBB rating produced this exchange:

> Nece: Well, hold it right there. Over a thousand [complaints] in three years is an outrageous amount and I just don't want to deal with Quicken Loans. I'm busy. I really don't want to be bothered further. [I'm] just giving you a courtesy call saying I got your message and I'm no longer interested...
>
> Malinowski: Sure.
>
> Nece: ... so thanks and goodbye.
>
> Malinowski: Did you read online...
>
> Nece: [Line Disconnected]
>
> Malinowski: ... about our three consecutive JD Power and Associate awards for customer satisfaction?

The calls persisted for at least another day, and Nece continued to rebuff Quicken.  On December 10, Quicken employee Matthew Sucharski called and introduced himself.  (Doc. 40-2 at 52)  Nece immediately said, "I just want to tell you that I changed my mind about loans with Quicken."  After repeating her reasons for preferring not to borrow from Quicken, Nece said, "I don't want to waste your time, I don't want to have my time wasted either so I'm just not interested.  But thank you for calling."

Around 11:30 in the morning on December 11, Quicken employee Kevin Bell called Nece. (Doc. 40-2 at 54) Following a familiar pattern, Nece immediately told Bell, "Before you go any further I've talked to about ten people from Quicken Loans and I told them I'm just no longer interested." After a brief conversation in which Nece repeated her reasons for preferring not to borrow from Quicken, Nece said:

> I prefer to go with [a local lender] and I wish you'd just make a note of it. Not[e] for your representative not to keep calling me because it's getting really annoying.
> . . . .
>
> I don't want to waste my time, I don't want to be bothered, I don't want you or your co-workers . . . to please keep . . . stop calling me.

Around 11:30 a.m. the next day, Quicken employee Elma Eminovic left a voicemail for Nece. Quicken's records show five more calls to Nece between December 12 and 14, but none resulted in a conversation or a voicemail. (Doc. 40-2 at 21)

On December 11, Nece penned a letter to Quicken's chief executive officer "RE: HARASSMENT AND STALKING." The letter says:

> Each time one of your representatives called me, I told them I was not interested and preferred to deal locally. That did not stop them from calling me daily, regardless of how many times I told them I do not want to deal with your company so <u>stop</u> calling me, it did not do any good. Your staff persisted in harassing and stalking me daily, even though I told them I was busy and to <u>stop</u> calling me.

(Doc. 1 at 35 (underlining original)) No record evidence shows when or if Quicken received the December 11 letter.

Additionally, Nece complained to the Florida Department of Agriculture and Consumer Services about Quicken. In the December 13, 2012 departmental complaint (Doc. 1 at 36), which asks a person to identify "one date of call per

- 4 -

complaint," Nece reported that Quicken called on December 13 at a quarter after one in the afternoon and that the call was not pre-recorded. In the comment section of the departmental complaint, Nece wrote: "Have gotten over [two] dozen phone calls from Quicken Loans after I told them I was not interested in one weeks' time."

Suing under the TCPA, Nece alleges (Doc. 1) that Quicken called with an artificial or pre-recorded voice (count one), that Quicken violated the prohibition in 47 C.F.R. § 64.1200(c) on a "telephone solicitation" to a number on the national do-not-call registry (count two), and that Quicken violated several provisions in 47 C.F.R. § 64.1200(d), which requires a company to "institut[e]" six "procedures" before calling a residential landline (count three). Quicken moves (Docs. 40 and 117)[1] for summary judgment on all three counts, and Nece moves (Doc. 99) for summary judgment on counts two and three. Also, Nece moves (Docs. 100 and 108) for leave to amend the complaint.

## DISCUSSION

### I. Motion for leave to add a wiretapping claim

A year after a November 21, 2016 order (Doc. 33 at 1) cautioned Nece that a motion for leave to amend the complaint is "distinctly disfavored after issuance of

---

[1] A February 5, 2018 order explains that the parties' divergent interpretations of a January 3, 2017 order (Doc. 37) produce an anomaly. Quicken interprets the January 3 order to dismiss every claim in count three other than the claim under 47 C.F.R. § 64.1200(d)(3), while Nece interprets the order as permitting the claims in count three under 47 C.F.R. § 64.1200(d)(1), (2), (4) and 47 C.F.R. § 64.1200(e). Because Quicken's response (Doc. 117) in opposition to Nece's motion for summary judgment appeared to show Quicken's entitlement to summary judgment on the claims under Section 64.1200(d)(1), (2), (4) and Section 64.1200(e), in accord with Rule 56(f), Federal Rules of Civil Procedure, the February 5, 2018 order permits Nece an opportunity to proffer evidence sufficient to show a genuine dispute of material fact about those claims. Nece responds in Doc. 126.

this order" and nine months after Quicken moved for summary judgment, Nece moves (Doc. 108) for leave to amend the complaint to assert a claim under Section 934.03(1), which prohibits the intentional interception of "any wire, oral, or electronic communication." The motion warrants denial for three reasons.

First, the proposed amendment (Doc. 100-3) is futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that an order need not allow a "futil[e]" amendment). Nece alleges that Quicken "recorded" Nece's calls using a third-party program, CallCopy. Liability under Section 934.03(1) requires that the defendant "intercept" a call, but the Florida Statutes provide a "business extension exception." A company incurs no liability under Section 934.03(1) if the company intercepts the call through a telephone or telephone equipment furnished by a "provider of wire or electronic communication service" and if the interception occurs in the "ordinary course of business." Applying the statutory definition of "intercept," *Royal Health Care Services., Inc. v. Jefferson-Pilot Life Ins. Co.*, 924 F.2d 215 (11th Cir. 1991), holds that a telephone, not a recording device, "intercepts" a call. 924 F.2d at 217 ("[The plaintiff] contends, however, that the interception was actually made by the tape recorder, not the telephone. We disagree. We believe the telephone extension intercepted the call.").

In this action, AT&T provided the telephone number at which Quicken called Nece (and on one occasion, at which Quicken received Nece's call). (Doc. 98-4) Like the defendant in *Royal Health*, Quicken recorded Nece's calls "pursuant to a standard [] policy." (Courtney Depo. at 29) The transcripts that result from the

recordings show that each intercepted call occurred in the ordinary course of business. In each call, Quicken attempted to solicit Nece's business. (Doc. 106 at 7) Because AT&T, a "provider of wire or electronic communication" service, furnished the telephone number through which Quicken intercepted Nece's calls and because Quicken intercepted the calls in the ordinary course of business, the "business extension" provisions except Quicken from liability under Section 934.03(1).

Nece attempts to distinguish *Royal Health* by arguing that in *Royal Health* the telephone company provided the tape recorder that intercepted the call. But *Royal Health* says nothing about who supplied the tape recorder, and nothing in *Royal Health* suggests that the meaning of "intercept" varies based on who supplies the recording device. The Eleventh Circuit recently confirmed that *Royal Health* remains binding on the district courts within the Eleventh Circuit. *Stalley v. ADS Alliance Data Sys., Inc.*, 602 Fed.Appx. 732 (11th Cir. Mar. 3, 2015) (per curiam) (observing that no decision of the Supreme Court or the Florida courts undermines *Royal Health* and rejecting a plaintiff's request that the Eleventh Circuit overrule *Royal Health*). *Royal Health* compels the conclusion that Nece's proposed amendment is futile.

Second, Nece unduly delayed moving for leave to amend. *See Foman*, 371 U.S. at 182 (explaining that "undue delay" warrants denying leave to amend). Nece discovered in January 2017 that Quicken recorded the calls. (Doc. 40-1 at 2–3) Under Nece's (erroneous) interpretation of Section 934.03, the unauthorized and undisclosed recording established a claim (Doc. 108 at 7), but Nece fails to explain

persuasively the ten-month delay in moving for leave to assert that claim.  Nece

attributes the delay to the August 2017 depositions of Quicken's corporate

representatives, who purportedly "confirmed" Quicken's violation of Section 934.03,

but Nece identifies no new information uncovered through the depositions.[2]  For

example, Nece argues that Quicken employee Amy Courtney's deposition

"confirmed . . . that Plaintiff was not told the calls were being recorded."  (Doc. 108

at 4 (italics omitted))  But the transcripts that Quicken provided to Nece six months

before the deposition confirm that Quicken never told Nece about the recording (that

is, the transcripts show no mention by Quicken of the recording).

Third, the proposed amendment unduly prejudices Quicken by prolonging the

resolution of this action.  *See Foman*, 371 U.S. at 182 (explaining that "undue

prejudice" warrants denying leave to amend).  Discovery closes on March 2, 2018,

and the trial begins in July.  Dependent on different facts than the TCPA claims, the

wiretapping claim almost certainly will require extending discovery by several

months and likely will require continuing the trial until 2019.

## II. Count one (claim under Section 227(b)(1)(B))

Section 227(b)(1)(B) of the TCPA prohibits a call "using an artificial or

prerecorded voice" without the "prior express consent" of the called party.  Quicken

moves for summary judgment and argues that Nece provides insufficient evidence to

---

[2]  To the extent Nece suggests the depositions "confirmed" Quicken's use of the CallCopy program, Nece offers no explanation for the failure to diligently request an admission or propound an interrogatory after Nece learned about the recordings.

- 8 -

establish a genuine dispute whether Quicken called Nece with a pre-recorded voice. Quicken employee James Wade affirms that Quicken deploys no artificial or pre-recorded voice in telemarketing. (Doc. 40-3 at 3)

Although Nece responds vigorously in opposition to Quicken's motion for summary judgment on counts two and three, Nece devotes two paragraphs to count one. (Doc. 106 at 18–19) Nece cites two items: Nece's declaration and a complaint from an unrelated action. In the declaration, Nece attests to receiving "prerecorded calls touting a mortgage from Quicken Loans." (Doc. 90-1 at 3) According to the declaration, "these calls were from an (800) or (888) phone number" and "Quicken Loans' name appeared on my caller ID." As Nece acknowledges, the declaration "does not state that these calls were from Quicken Loans." (Doc. 95 at 3 (internal quotation omitted)) Viewed favorably to Nece, the appearance of Quicken's name on the caller ID permits (at most) an inference that Quicken called Nece.[3]

Also, Nece submits an unverified complaint from another action, but an unverified complaint is not evidence and cannot contribute to the resolution of a motion for summary judgment. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968) (citing Rule 56(e)). A party establishes a genuine dispute of material fact by proffering an affidavit, a deposition, or other verified factual content, not by recycling allegations.

---

[3] Quicken attacks the declaration as "self-serving," but nothing in the Federal Rules of Civil Procedure permits disregarding a "self-serving" affidavit. As *United States v. Estelle Stein*, --- F.3d --- , 2018 WL 635960 (11th Cir. Jan. 31, 2018), explains, most (if not all) affidavits submitted by a party support that party's claim or defense. 2018 WL 635960 at *4 (holding that a self-serving and uncorroborated affidavit "can" create a genuine dispute of material fact in some circumstances).

In response to a subpoena that commanded AT&T to produce every call from Quicken to the 7355 number between November 2012 and the present, AT&T produced the call records. Quicken observes — and Nece conspicuously fails to rebut — that Nece identifies no evidence in the AT&T records of a pre-recorded call from Quicken to Nece. Under Rule 56(e)(2) and in this order, that the AT&T records evidence no pre-recorded call from Quicken to Nece remains undisputed.

Through thirteen months of discovery, Nece's capable counsel failed to uncover any evidence that Quicken called Nece with a pre-recorded voice. (Doc. 98-3 at 5) Nece submits no copy or transcript of a pre-recorded message, no telephone records to show a flurry of (800)- or (888)- calls in early 2013, and no affidavit from another person who overheard the pre-recorded calls in Nece's voicemail. In this circumstance, the inference raised by Nece's declaration amounts to no more than a "mere . . . scintilla of evidence" insufficient to establish a genuine dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Viewing the record favorably to Nece, no reasonable jury could find that Quicken called Nece with a pre-recorded message.

### III. Count two (claim under Section 64.1200(c))

47 C.F.R. § 64.1200(c)(2) prohibits a "telephone solicitation" to a person whose number appears on the national do-not-call registry. The former assignee of the 7355 number registered the number on the national do-not-call registry in 2007, and Nece confirmed in January 2012 that the 7355 number remained on the national

do-not-call registry. (Nece Depo. at 169) The number "was never taken off the do-not-call list at any time." (Nece Depo. at 169)

By providing the 7355 number through the Quicken website and through the e-mail, Nece admittedly invited Quicken to call. In a deposition, Nece agrees that she provides her number when she "want[s] someone to call [her]." (Nece Depo. at 48–49) Despite Nece's agreeing that she provides a number so that a company can call, Nece now denies consenting to a call from Quicken. (Doc. 106 at 7 n.8) *Schweitzer v. Comenity Bank*, 866 F.3d 1273 (11th Cir. 2017), states that "consent ends when the actor knows or has reason to know that the person is no longer willing to allow certain conduct." 866 F.3d at 1279. Citing *Schweitzer*, Nece argues that she consented "conditional on Quicken Loans having 'local offices in Pinellas County, Florida.'" (Doc. 106 at 7 n.8 (quoting the December 7 e-mail to Quicken)) In fact, the e-mail asks whether Quicken operates a branch in Pinellas County but includes no suggestion that the absence of a Pinellas County branch will abruptly terminate Nece's interest and prohibit Quicken's calling Nece. If Nece intended to permit a call from Quicken only if Quicken operated locally, Nece never clearly expressed that intention to Quicken. In short, Nece acquiesced to Quicken's calling.

Nece argues that the revocation of consent by a person on the national do-not-call registry triggers liability under Section 64.1200(c) for every call after the revocation of consent. Quicken interprets Section 64.1200(d)(3) as affording Quicken a "reasonable time" within which to honor the do-not-call request.

The applicable definitions support Quicken's argument. Section 64.1200(c)(2) prohibits a "telephone solicitation" to a number on the national do-not-call registry. A "telephone solicitation" means a call that encourages the purchase of goods or services, but Section 64.1200(f)(14) excludes from the definition of telephone solicitation a call "[t]o any person with that person's prior express invitation or permission" or "[t]o any person with whom the caller has an established business relationship." In turn, Section 64.1200(f)(5) defines "established business relationship" as a relation formed by a person's "inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." Section 64.1200(f)(5)(i) provides that a person can terminate the established business relation by requesting — "as set forth in [Section 64.1200(d)(3)]" — that the company stop calling, even if the person continues to transact business with the company.[4] Section 64.1200(d)(3) requires a company to implement procedures to ensure that the company "honor[s] a residential subscriber's do-not-call request within a reasonable time," which "may not exceed thirty days."

In plainer English, the do-not-call regulations establish this sensible scheme: A company generally may not call a person on the national do-not-call registry. If a person on the national do-not-call registry inquires about the company's services and provides a phone number, the company may call the person for three months after

---

[4] Silent about the form or content of a do-not-call request, Section 64.1200(d)(3) describes the procedure with which a company must comply after receiving a do-not-call request.

the inquiry. To accommodate a request that the company stop calling, the company must implement a policy mechanism to add the number to the company's do-not-call registry at the time of the request and to honor the request within a reasonable time.

Nece's argument, which subjects a company to liability under Section 64.1200(c) if the company calls even a day after the request to stop calling, produces a discordant result. Under Section 64.1200(d)(3), a telemarketer must implement a procedure to honor a do-not-call request in a reasonable time, not immediately. If successfully implemented, the procedure necessarily results in the company's honoring a do-not-call request in a reasonable time, not immediately. Requiring a telemarketer to stop calling immediately after a do-not-call request, Nece's interpretation tees up most telemarketers for a violation of Section 64.1200(c). To the extent Nece argues that Section 64.1200 "provides its own defenses," the presence of the "erroneous" call defense in Section 64.1200(c)(2)(i) fails to alter the conclusion that Quicken must honor a do-not-call request in a reasonable time, not immediately. The incorporation of Section 64.1200(d)(3)'s "reasonable time" standard through Section 64.1200(f)(5)(i) means that a call initiated within a reasonable time after a person on the national do-not-call registry ends the established business relation is not a "telephone solicitation." In short, Quicken is not liable for violating Section 64.1200(c) if Quicken honored Nece's do-not-call request within a reasonable time.

At least two predominant disputes of material fact preclude summary judgment for either party in count two. First, the record reveals uncertainty about

when Nece revoked consent to a call. To withdraw consent, a person must "clearly express[] a desire not to receive further messages." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (applying *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 7997 at ¶ 67) (July 10, 2015)).[5] Nece argues that Quicken's records prove a clear revocation of consent on December 7. That day, Quicken employee Ryan Matthey answered "NO" to the question "Contact in future?" in "LOLA." (Doc. 40-2 at 33) Although probative, one employee's subjective interpretation of Nece's comments fails to compel the conclusion that on December 7 Nece directed Quicken to stop calling. Additionally, Matthey might have decided that Nece's comments showed that she likely would borrow money from another mortgagee. In that instance, a telephonic solicitation after December 7 might prove fruitless but lawful.

Except for the December 11 call, Nece's comments appear susceptible to more than one reasonable interpretation. Nece repeatedly says that she "do[esn't] want to get involved" with Quicken. On other occasions, Nece states that she "d[idn't] want to waste [Quicken's] time" and that she "d[idnt'] want [Quicken] to waste [her] time." Viewing the record favorably to Quicken, a reasonable jury might conclude that the comments, which conspicuously omit a phrase equivalent to "remove me from the call list" or "stop calling me," clearly expressed Nece's preference to borrow

---

[5] Although the FCC issued the order after Quicken's calls to Nece, the order can aid in the resolution of this action because the FCC order clarifies rather than alters the applicable law. *See Scheweitzer v. Comenity Bank*, 866 F.3d 1273, 1277 n.1 (11th Cir. 2017).

from another lender but failed to direct Quicken to stop calling. Viewing the record favorably to Nece, a reasonable jury might find in those comments a clear expression of Nece's desire that Quicken stop calling. In short, a genuine dispute of material fact about the clarity of Nece's comments (other than in the December 11 call) precludes summary judgment for either party.[6]

Second, a jury must decide whether Quicken honored Nece's do-not-call request in a reasonable time.[7] That decision depends partly on when Nece directed Quicken to stop calling. If the jury finds that Nece clearly requested on December 7 that Quicken stop calling, the jury might find unreasonable the persistence of Quicken's calls for a week. Conversely, if Nece clearly requested no earlier than December 11 that Quicken stop calling, a jury might find reasonable the three-day delay in failing to honor Nece's do-not-call request.

Also, Nece's repeated submissions inform the reasonableness of Quicken's response. As Nece explains, Quicken "opened multiple, internal 'leads'" after Nece submitted the website forms and sent the e-mail to Quicken. (Doc. 107 at 3, at which

---

[6] Even viewing the record favorably to Quicken, one call clearly expresses Nece's desire that Quicken stop calling. On December 11, Nece asked Bell to "not[e] for your representative not to keep calling me because it's getting really annoying" and told Bell, "I don't want to be bothered." But as explained elsewhere in this order, a jury might find reasonable the brief delay in failing to honor Nece's request.

[7] Quicken argues that Section 64.1200(d)(3) establishes conclusively the reasonableness of a call less than thirty days after a do-not-call request, but the section establishes as a matter of law only the converse (that is, the unreasonableness of a call more than thirty days after the request). *See, e.g.*, *Wolfkiel v. Intersections Ins. Serv. Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014); *Martin v. Comcast Corp.*, 2013 WL 6229934 (N.D. Ill. Nov. 26, 2013). *But see, e.g.*, *Simmons*, 222 F.Supp.3d at 139, *aff'd mem.*, 686 Fed.Appx. 48 (2d Cir. Apr. 7, 2017); *Orsatti v. Quicken Loans, Inc.*, 2016 WL 7650674 at *7 (C.D. Cal. Sept. 12, 2016).

Nece identifies by "jacket number" several of the leads)  Quicken's records reveal that Quicken successfully identified and consolidated some but not all of the leads generated by Nece's repeated submissions.  Courtney affirms that, for at least one lead, Quicken added Nece's number to the company's do-not-call registry on December 7.  (Doc. 117-1 at 1)  As Quicken correctly observes (Doc. 117 at 8 n.8), the "unique facts [of Nece's repeated submissions]" contribute to a genuine dispute about the reasonableness of Quicken's response.

## IV. Count three (Sections 64.1200(d) and (e))

Section 64.1200(d) prohibits a company's "initiating any call [to a residential landline] for telemarketing purposes . . . unless [the company] has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls."  Section 64.1200(d)(1) through (6) details the procedures a company must "institute[]" before calling a residential landline to market a good or service.  Even viewed favorably to Nece, the record evidence shows no genuine dispute of material fact.  Quicken is entitled to summary judgment on the alleged violations of Sections 64.1200(d) and (e).

### A. Written policy

Section 64.1200(d)(1) requires a company to establish a "written policy, available upon demand, for maintaining a do-not-call list."  Quicken established a written policy for maintaining a do-not-call list (Doc. 90-5 at 2–3).  Nece never requested Quicken's do-not-call policy (Nece Depo. at 168), but in any event, no evidence shows that Quicken refuses to provide the policy to a person who demands

a copy. Quicken employee Gary Weingarden affirms that the policy "was available to Quicken Loans' clients and potential clients upon request." (Doc. 117-2 at 2)

Also, Nece argues that Quicken's written policy violates Section 64.1200(d)(1) because the policy omits a requirement that an employee disclose his name, Quicken's name, and Quicken's telephone number or address, but Section 64.1200(d)(1) requires only that Quicken maintain a "written policy, available upon demand, for maintaining a do-not-call list." Section 64.1200(d)(1) contains no requirement that the written policy repeat the language of Section 64.1200(d)(4).

### B. Employee training

Section 64.1200(d)(2) states that an employee who telemarkets a product must "be informed and trained in the existence and use of the do-not-call list." Weingarden affirms that Quicken trains every employee engaged in telemarketing about Quicken's do-not-call policy. (Doc. 117-2 at 2) No evidence shows that Quicken called a residential landline before "institut[ing]" a procedure to inform an employee about the do-not-call list and to train an employee about the use of the list.[8]

### C. Recording and honoring of a do-not-call request

If a person directs a company to stop calling, Section 64.1200(d)(3) requires adding the person's number to the company's do-not-call list "at the time the request

---

[8] Nece harps on the word "can" in a training document (Bates No. QL-NECE000319) and argues that Quicken's policy allows but fails to require an employee to record a do-not-call request. Even viewed favorably to Nece, the document (which explains the technical procedure for entering an opt-out request) fails to establish a genuine dispute about the existence or adequacy of Quicken's training.

is made" and requires honoring the request within a reasonable time. Unlike Section 64.1200(c)(2), which establishes liability for a "telephone solicitation" to a person on the national do-not-call registry, success on a claim under Section 64.1200(d)(3) requires proof that the company called before "institut[ing] procedures" to add a number to the do-not-call registry and to honor the do-not-call request. When Quicken called Nece, Quicken's policy required adding a number to the company's do-not-call list at the time of the request. Consistent with that policy, Quicken excluded the number from "any future telephone solicitations for the sale of the Company's products and services." (Doc. 117-2 at 7) Weingarden affirms that, at the time Quicken called Nece, Quicken trained employees about the do-not-call list and that Quicken employees "followed and complied" with Quicken's do-not-call policy. (Doc. 117-2 at 2)

The record in this action reveals one unambiguous request by Nece that Quicken stop calling. Through thirteen months of discovery (including several depositions of Quicken's corporate representatives), Nece uncovered no evidence that Quicken failed to implement a do-not-call procedure compliant with Section 64.1200(d)(3). An isolated failure to timely record a do-not-call request establishes no genuine dispute whether Quicken called Nece before instituting a sufficient do-not-call policy. *Simmons v. Charter Comms, Inc.*, 222 F.Supp.3d 121, 139–141 (D. Conn. 2016) (Underhill, J.). Even if Nece directed Quicken to stop calling in more than one conversation, in this instance the sporadic or scattered non-compliance purportedly evidenced by a handful of calls falls short of establishing

a genuine dispute whether Quicken called Nece before "institut[ing]" a procedure compliant with Section 64.1200(d)(3).

### D. Telephone number or address

Section 64.1200(d)(4) states that a telemarketer must "provide the called party with the name of the individual caller . . . and a telephone number or address at which the [caller] may be contacted." The parties disagree whether a private plaintiff can sue for an alleged violation of Section 64.1200(d)(4). Sections 227(b) and (c) of the TCPA provide a private right of action, but Congress declined to provide a private right of action for a violation of Section 227(d). That section, titled "technical and procedural standards," prohibits a call through an "automatic telephone dialing system"[9] and prohibits a call using an "artificial or prerecorded" voice unless the call complies with the FCC's regulations. Concluding that the FCC enacted Section 64.1200(d)(4) under Section 227(c), a handful of decisions hold that a private plaintiff can sue for a violation of Section 64.1200(d)(4). *See, e.g., Charvat v. NMP, LLC*, 656 F.3d 440, 444 (6th Cir. 2011) (Moore, J.). Other decisions conclude that the FCC promulgated Section 64.1200(d)(4) under Section 227(d), which provides no private right of action. *See, e.g.*, *Worsham v. Travel Options, Inc.*, 2016 WL 4592373 (D. Md. Sept. 2, 2016) (rejecting *Charvat*); *Burdge v. Ass'n Health Care Mgmt., Inc.*, 2011 WL 379159 (S.D. Ohio. Feb. 2, 2011).

---

[9] Quicken initiated the calls through "LOLA," Quicken's automated telephone dialing system. (Doc. 107 at 3 n.2)

Even if Congress provided a private right to sue for an alleged violation of Section 64.1200(d)(4), the unrebutted evidence shows that Quicken's policy required the disclosure of an employee's name, Quicken's name, and a telephone number for Quicken. Weingarden affirms that "Quicken's policy was to instruct and train its team members involved in outbound calls to . . . identify themselves, to state they were calling from Quicken Loans, and to provide a callback number." (Doc. 117-2 at 3) As Nece acknowledges, the violation of Section 64.1200(d)(4) results not from an employee's failure in a particular call to provide a name, the company's name, and a telephone number or address but rather from the initiation of the call absent the company's "having implemented the minimum procedures required by this regulation." (Doc. 106 at 11 (collecting decisions)) Nece presents insufficient evidence to show a genuine dispute whether Quicken called Nece before "institut[ing]" a disclosure policy compliant with Section 64.1200(d)(4).[10]

**E. Call to a "wireless telephone number"**

Section 64.1200(e) extends Section 64.1200(d)'s requirements to a telemarketer's call to a "wireless telephone number." The evidence shows no call other than to the 7355 number, Nece's landline.

---

[10] Additionally, Nece argues unpersuasively that Section 64.1200(d)(4) requires an employee to disclose his "full name" in a call, but the provision says "name," not "full name," "legal name," or "first and last name." A first name is a name. In any event, the disclosure requirements secure a person's ability to identify and respond to a caller, and each employee who left Nece a voicemail included a callback number in the voicemail. (Doc. 40-2 at 48 and 57) Also, two employees named Alex called Nece, one left a voicemail, and the callback number in the voicemail permitted Nece to identify the employee who called.

## V. Other items

### A. Motion for leave to reply to Quicken's opposition to an amended complaint

Local Rule 3.01(d) prohibits moving in a paper longer than three pages for leave to reply and prohibits the motion's including the proposed argument "as an attachment or otherwise." Nece moves in a six-page paper for leave to submit a five-page reply; five pages of the motion rebut Quicken's opposition. The motion warrants striking for failure to comply with Local Rule 3.01(d).

### B. Class discovery and certification

An August 28, 2017 order (Doc. 89) suspends the deadline to move for class-certification. If Nece elects to move for class certification, the parties must promptly confer about the time within which Nece may move to certify a class. No later than **FEBRUARY 19, 2018**, Nece must move to establish the deadline to move for class certification. If Quicken opposes the deadline proposed in Nece's motion, Quicken must respond no later than **FEBRUARY 22, 2018**.

### C. Mediation

No later than **MAY 1, 2018**, the parties must mediate before Robert Daisley. The parties must submit a notice of mediation no later than **FEBRUARY 19, 2018**.

## CONCLUSION

A prospective mortgagor, Nece submitted several inquiries to Quicken on December 7 and provided her phone number to Quicken at least twice. Over the next week, Quicken called Nece about a dozen times. After learning that Quicken

operated no branch in Pinellas County and after discovering the frequent Better Business Bureau complaints against Quicken, Nece repeatedly told Quicken that she "changed [her] mind" about Quicken, that she "prefer[red] to deal" with a local lender, and that she "d[idn't] want to waste [Quicken's] time and d[idn't] want [Quicken] to waste" her time. The parties dispute the effect of Nece's comments, which appear susceptible to more than one reasonable interpretation. If Nece directed Quicken on December 7 to stop calling, Quicken's repeated calls might prove unreasonable. Conversely, Quicken's response might prove reasonable if Nece directed Quicken on December 11 to stop calling. In sum, at least two genuine disputes of material fact preclude summary judgment for either party on count two. Even viewed favorably to Nece, the record reveals evidence insufficient to establish a genuine dispute whether Quicken called Nece with an "artificial or prerecorded voice" or whether Quicken called Nece before "institut[ing]" procedures compliant with Sections 64.1200(d) and (e).

Quicken's motion (Docs. 40 and 117) for summary judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**. Quicken is entitled to summary judgment on counts one and three. Nece's motion (Docs. 99 and 107) for summary judgment on counts two and three is **DENIED**. Nece's motion (Docs. 100 and 108) to add a wiretapping claim is **DENIED**. Nece's motion (Doc. 113) for leave to reply to Quicken's opposition to the motion to amend the complaint is **STRICKEN**, and Nece's motion (Doc. 119) for leave to reply to Quicken's opposition to Nece's motion for summary judgment is **DENIED**. Quicken's motion (Doc. 104) to

suspend the time within which to respond to Nece's motion for summary judgment is

**DENIED AS MOOT**.

ORDERED in Tampa, Florida, on February 14, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE